DAVID J. WILLIAMS *v.* JOHN L. BONNER, GUARDIAN.

1. GUARDIAN AND WARD. *Medical and surgical aid to ward. Corpus of estate. Insufficient income. Order of court. Code* 1892, § 2197.

  The guardian, without a previous order of the chancery court (under code 1892, § 2197, amended Laws 1894, p. 47), may bind the corpus of the estate of his ward for necessary medical and surgical attention and services to the ward, it being better to sacrifice the estate than the life of the ward.

2. SAME. *Charge against guardian individually. Estoppel.*

  Although a physician and surgeon may have entered a charge on his books of accounts against the guardian for necessary services rendered the ward, he is not estopped thereby from propounding his claim against the estate of the ward.

FROM the chancery court of Jones county.

HON. STONE DEVOURS, Chancellor.

Williams, appellant, was complainant in the court below, and Bonner, guardian of Ruby Bonner, an infant, was defendant there. The suit was an application to the chancery court, in which the guardianship was pending, for a decree directing the guardian to pay complainant's debt from the estate of the ward. The chancery court disallowed the application and dismissed the suit, and complainant appealed to the supreme court. The facts are stated in the opinion of the court. The act of February 10, 1894, repealing § 2196, code 1892, and amending § 2197, code 1892, is as follows:

"SECTION 1. Be it enacted by the legislature of the State of Mississippi, that § 2196 of the annotated code be, and the same is hereby, repealed; that §2197, of the annotated code of 1892 be so amended as to read as follows: The chancery court, or chancellor in vacation, may, at discretion, settle the sum to be expended in the maintenance and education of a ward, having regard to his or her station, future prospects and destination;

and may allow expenditures in excess of the income of the estate, and, if necessary, may order sale of so much of the personal estate as may be necessary to meet such expenditures. And if the personal estate and the rents and profits of the real estate be not sufficient for the maintenance and education of the ward, the court may, on investigation, decree the sale of such part of the real estate of the ward as may be necessary for that purpose; but if it be more advantageous to the ward, the court may order the sale of real estate in preference to the sale of personal property, but no guardian shall make any expenditures in excess of his ward's income for the ward's support and education, without a previous order of the court or chancellor authorizing the same."

*Hardy & Howell,* for appellant.

Dr. Williams simply responded to a call for his immediate services in a desperate case and did not make, nor could make, any arrangement as to the payment of his fees. There is nothing to show that he was even acquainted with Bonner, who lived ten miles in the country, and the simple fact that appellant entered the charge on his books against Bonner individually should not bind him to look to Bonner alone for the payment of his fee. Some one ought to pay this bill, which is admitted to be reasonable.

There was no arrangement between Dr. Williams and Bonner, and no questions asked (or could be under the circumstances) by Williams at the time of the call for his services, as to who should pay for the same—Bonner individually or Bonner as guardian of Ruby Bonner, the ward.

Is a physician or surgeon required to stop and arrange every detail as to the payment of his fees before he responds to a summons like this, when life hangs by a slender thread, and; in case of a disagreement, shall he refuse to respond and allow a human life to be lost when the patient, an infant, has an ample estate?

Bonner, guardian, refuses to pay this bill, or any part thereof, notwithstanding he admits it to be reasonable. He had, and has, in his hands, as guardian of Ruby Bonner, the sum of fifteen hundred dollars in cash.

*Buckley & Halsell,* for appellee.

This case rests for its solution simply on the well-settled law of contracts, viz.: an agreement, a meeting of the minds.

The agreed facts in this case show that Bonner employed Dr. Williams to attend his daughter as a physician, and fully intended to pay him out of his own individual funds, and this was so understood by Williams, as the account on his (Williams') books was charged to Bonner individually, and statements were made out and rendered against Bonner individually, and upon Bonner refusing to pay the account because he (Bonner) thought it was too large, Williams concluded to sue him individually, but finding that Bonner had no property, it occurred to him to sue the ward of Bonner, who had property, and his books show that Williams changed the account upon his books and changed the account upon which suit was to be brought by adding to the name of J. L. Bonner the following: "Guardian estate and person of Ruby Bonner, a minor." Having contracted with Bonner individually and looked to Bonner for his pay, Williams cannot change the account and charge to a party with whom he made no contract.

The facts also show that Bonner had maintained and supported his ward out of his own private funds, just as if she had no property, and given her a home, and she was living with him, and had made no charge against her estate for anything, all of which shows he expected to pay Williams out of his own private funds. Simply because the record shows that Bonner had no property, it does not necessarily follow that he could and would not have paid Williams if the account had been smaller or reduced to judgment. Having contracted with Bonner in-

dividually, just as he would with any other person for services to his child, the doctor must look to Bonner.

The facts further show that Williams has not reduced his claim to judgment, and has, therefore, not exhausted all his legal remedies before attempting to get the money out of the estate of Ruby Bonner. Besides, the case at bar, having been submitted to the learned chancellor on the facts, and decided adversely to Williams, this court has no right to disturb a finding of facts. In addition to this, the whole question is one within the discretion of the chancellor.

TERRAL, J., delivered the opinion of the court.

Dr. Williams was a practicing physician at Ellisville, where he resided, and, as surgeon and physician, was called by J. L. Bonner to attend upon his minor daughter, Ruby Bonner, who lived with him, some ten miles in the country. Ruby was involuntarily shot by her own hand, was seriously wounded, and her life despaired of. Dr. Williams was called to her, and his bill for $107.50 is agreed to be reasonable. J. L. Bonner was then, and is yet, the guardian of Ruby, who had a small estate in his hands, and at the time of her misfortune had no order of court to expend any of the capital of her estate for any purpose. The account when made by Dr. Williams was charged simply to J. L. Bonner. Bonner, it is admitted, is insolvent; and he declined to pay the account, whereupon Dr. Williams brought his suit in chancery against him as guardian of Ruby Bonner. The defenses are: (1) That, Dr. Williams having charged the account at first to J. L. Bonner individually, he is precluded from recovering the same of Bonner as guardian; (2) it is said that Bonner could not, as guardian, contract to pay any sum of money, so as to encroach upon the capital of the estate of the minor in his hands, and therefore a suit could not lie against him as guardian under the circumstances of this case.

1. We regard it as a matter of small moment that the account was first charged against Bonner individually. When all the facts and circumstances relating to the matter and to the persons connected with them were made known to Dr. Williams, he was then at liberty to charge his account as right and justice dictated.

2. The doctrine relating to the duties of a trustee at common law (and in this category the guardian stands to his ward) requires him, when the life of the *cestui que trust* is put in competition with the expenditure of his property, to sacrifice the latter, if need be, for the former. That medical services are necessaries to an infant may not, upon the authorities, be questioned, and that an infant himself (there being no other to do so) might call in a surgeon, and bind his estate for a reasonable fee, cannot be denied, and what an infant himself might do, we think a guardian could do for him. The general rule undoubtedly is that a guardian may not ordinarily exceed the income of the ward in his maintenance and education, without a previous order of court therefor. But there are exceptions to the rule, and in a case where the court, if it had foreseen the event, would have made an allowance therefor, though exceeding the income of the estate, there the guardian, of his own authority, and without previous authorization, may make the necessary expenditure. In the Law of Infants, by Field (secs. 122 and 123), it is said: "The general principle seems to be that the guardian must not trench upon the corpus of the estate, and allowances for expenditure in advance of the income are only made when clearly demanded by justice, though courts sometimes ratify acts of guardians in spending more than the income of estates upon their wards. The more common rule is that guardians will be protected by the court in necessary, proper and economical disbursements made for the benefit of their wards, though made without prior order of court, and although they trench upon the capital or corpus of the estate; and such disbursements will be allowed as credits if it appears to the

court, on inquiry, that the expenditures were such as the court would have allowed or ordered had previous application been properly made for that purpose." In North Carolina an expenditure above the income of the ward, without a previous order of court, made by the guardian for the benefit of the health of the ward, in sending him to a distant locality, was allowed. *Long* v. *Norcom,* 37 N. C., 354. In speaking of credit asked by the guardian made for his education and maintence in excess of the income of the ward without a previous order of court, the court, in *Frelick* v. *Turner,* 26 Miss., 394, said: "It is only in very special cases, such as could not be foreseen, that the court ought, under any circumstances, to sanction a charge of this kind not previously authorized by the court." Assuredly the case here before us, not to be anticipated by human wisdom or foresight, in which the despair of life of the ward calls for aid from the principal of her own estate, and which aid none other would render, is one of the cases covered by exceptions mentioned by the court. We think the complainant should have recovered.

*Reversed and remanded.*