DEPOSIT GUARANTY BANK & TRUST CO. v. MANGUM.

(Division B. March 25, 1935.)

[160 So. 386. No. 31641.]

H. Chalmers Alexander, of Jackson, for appellant.

**J. B. Hutton, Jr.**, of Jackson, for appellant.

446

R. C. Russell, of Magee, and J. A. Covington, Jr., of Meridian, for appellee.

Argued orally by J. B. Hutton, Jr., for appellant.

Ethridge, P. J., delivered the opinion of the court.

The appellee, Emery C. Mangum, was appointed guardian of Ethel F. Mangum, non compos mentis, and, as such, received from the United States government funds for said ward who was shell shocked, resulting in the impairment of his mind. The guardian received from the United States government a total amount, during the guardianship, of seven thousand one hundred fourteen dollars and sixty-eight cents. The funds so received were never invested, but were placed in the bank at

Magee where the guardian and ward lived, and were checked out and expended in various amounts and for various purposes, without any previous order of the chancery court so to do. The guardian finally resigned, and the appellant bank was appointed guardian and filed exceptions to the annual and final accounts. Emery F. Mangum was placed on the stand as an adverse witness and interrogated in reference to his expenditures and accounts, and it appears from his testimony that he furnished the ward money whenever he demanded it, and did not secure any written orders from the chancery court authorizing same. He testified that he had personal interviews with the chancellor who told him to do the best he could, and with physicians who told him to humor his brother as far as possible, and not to antagonize him any more than he could help. He further testified that his brother, the ward, has a violent temper, and that he would become infuriated when he was not given money, and it was always given to him if the guardian had it. He further testified that he considered the chancellor the court, and frequently telephoned or had conversations with him about allowances to his brother. Accounts were filed at irregular intervals, which showed heavy expenditures. For instance, in the fourth annual account, approved November 21, 1928, it was recited that he had on hand, at the last accounting, the sum of five hundred thirty-two dollars and twenty-five, cents, that he received from the United States government nineteen payments of one hundred dollars each, equaling one thousand nine hundred dollars, making a total received of two thousand four hundred thirty-two dollars and twenty-five cents, and that he had expended during this period the sum of two thousand four hundred thirty-two dollars and twenty-five cents, and that said expenditures, as set forth, were approved. It was set forth in said account that the guardian was directed to pay his mother the sum of fifteen dollars each month.

It seems to have been the idea of the guardian that he was authorized to spend money at his discretion, and he frankly admitted that he received no written order therefor. The ward was permitted to roam about the country, and to draw checks or drafts which were taken up or honored by the guardian without authority of the court. On one occasion, a brother of the guardian was permitted to take the ward West, ostensibly on the ground of ill health, and the brother was given two hundred fifty dollars, and they had proceeded as far as Dallas, Texas, where the ward left the brother during the night, taking from his brother's pockets the two hundred fifty dollars. No order is shown to have been given the guardian for that sum.

In November, 1924, there was an order of court authorizing the expenditure of thirty dollars per month for the ward, but this limitation was never observed, and the amounts expended were approved by the court as they were presented from time to time.

We have examined the various items, and find no clear showing of any emergency calling for any unusual expenditures.

By section 1903, Code of 1930, it is said, among other things, that: "It shall be the duty of the guardian of persons mentioned in the foregoing section [insane persons, etc.] to improve the estate committed to his charge, and to apply so much of the income, profit or body thereof as may be necessary for the comfortable maintenance and support of the ward, and of his family, if he have any, after obtaining an order from the court fixing the amount," etc.

In order to expend more than the income of the estate it is necessary for the guardian to secure an order of the court prior to such expenditure. Chapman v. Pentecost, 161 Miss. 600, 137 So. 539, in which it was held that a precedent order of the court or chancellor is indis-

pensable in determining whether the guardian shall bear the expenses of a ward whose parents are living. It is true this decision was rendered in a case where a minor was involved, but the same rule is applied as to others. The statute plainly requires a previous order of court. See, also, Austin v. Lamar, 23 Miss. 189; Brown v. Mullins, 24 Miss. 204; Frelick v. Turner, 26 Miss. 393; Gilbert v. McEachen, 38 Miss. 469; Wiggle v. Owen, 45 Miss. 691; Darter v. Speirs, 61 Miss. 148; White v. Moore, 164 Miss. 272, 144 So. 696; Dalton v. Jones, 51 Miss. 585, 587.

It is true there are exceptions where life and death are involved, and perhaps other extreme and extraordinary conditions, in which guardians may not be able to secure previous orders, and in which they would be allowed to make expenditures. Williams v. Bonner, 79 Miss. 664, 31 So. 207.

It is argued that section 1903 is a mere re-enactment of the rule at common law upon the subject, and at common law the court had the power to approve after the expenditures, if it would have approved same if they had been presented for allowance prior thereto. We are not able to accept this theory of section 1903, and of the other statutes directing previous orders to be obtained. The statute was designed to secure estates of wards from rash and reckless expenditures, and to keep under the scrutiny of the court claims for money before expenditures are made.

It is not entirely clear but what some of the expenditures in the case at bar may have been necessary where the ward was away from home and had to be returned thereto, but there is no showing in the record that an order of the court could not have been obtained for that purpose, or that it was necessary for him to have gone to that distant point. It rather appears that the ward was allowed to go where he pleased and when he pleased, and spend as much as he pleased.

The decree of the court below, therefore, will be reversed, and the cause remanded for a hearing in accordance with the principles announced herein.

Reversed and remanded.