ETHRIDGE, Chief Justice:
This appeal from a decree of the Chancery Court of Newton County involves the powers and duties of a guardian of an adult non compos mentis. Billy Neville, appellant, was the former guardian of Wil *830 liam H. Kelso, n. c. m. In June 1968 this Court upheld the decree of that court removing Neville as guardian. Neville v. Kelso, 211 So.2d 825 (Miss.1968). The opinion observed that the ward had animosity toward Neville as guardian, and whether that feeling was justified or imaginary, it was a fact which tended to emotionally upset the ward, so the decree removing the guardian was affirmed, since the trial court had not abused its discretion. The opinion stated:
The record reflects that the guardian has served ably and well under trying circumstances. The annual accounts having been duly ratified and approved by the court are prima facie correct in behalf of the guardian. * * * We make no finding in this regard as the presumption of correctness will be maintained until displaced by proof on final account. * * *
The decree of the lower court is hereby affirmed and the cause remanded for final account in accord with its former decree, but on such account the guardian and his attorneys are entitled to an appropriate fee for their services, but not to include attorneys’ fees on this appeal. (211 So.2d at 826).
On remand appellees, Kelso and his successor guardian, D. M. Anderson, filed a petition to surcharge and falsify ten annual accounts of Neville as predecessor guardian, for the years 1958-1968. The chancery court surcharged a number of vouchers and awarded the successor guardian a judgment against Neville and his bondsmen in the amount of $23,881.04. The proceeds of these vouchers went directly to the benefit of the ward. The decree was rendered on the basis that these payments either had not been previously authorized by the court, or that the amounts attthorized to be paid had been exceeded.
I.
A substantial portion of the facts were stipulated by the parties. One general fact applicable to all of the vouchers involved on this appeal is that every voucher sought to be surcharged by the Chancery Court of Newton County had been itemized in an annual account by Neville, the original vouchers had been filed with these accounts, and every one of the annual accounts had been allowed and approved by the Chancery Court of Newton County prior to the filing of the petition by the successor guardian to surcharge.
William H. Kelso,''at the' time óf the trial, ’was 63 years of age. He was declared to be mentally incompetent by a jury verdict in Tennessee in 1934. He has been a resident of Mississippi since August 1936, and since January 1937 has been under guardianship as an adult mental incompetent in the chancery courts of this state. From May 9, 1949, to January 15, 1958, he was under guardianship in Cause No. 7382 in the Chancery Court of Wayne County, with Billy Neville as guardian. The Wayne County guardianship was terminated by final decree on January 15, 1958, the ward having moved to Newton County. The guardianship proceeding in Newton County was then begun on petition of Nev-ille as guardian, who served in that capacity in Newton County from January 15, 1958, until his discharge by a decree of April 4, 1967. That decree was the one affirmed by this Court in 1968. On April 13, 1968, Billy Neville as guardian filed his final account in the Chancery Court of Newton County. The ward Kelso, through his successor guardian, entered exceptions in the form of a petition to surcharge and falsify the ten annual and final accounts. There was a lengthy hearing, a large record, and the final decree of the chancery court surcharging Neville and rendering judgment against him for $23,881.04.
During the accounting period of 1958-68, Neville as guardian filed numerous petitions for authority to make various expenditures, and obtained during this period about sixty-six orders from the court. Prior to the transfer from Wayne to Newton County, Neville also served as chancel *831 lor for Wayne County. Chancellor Roy P. Noble of the adjoining chancery district served as special chancellor in authorizing various expenditures by Neville as guardian for the ward and in approving his annual accounts. When the guardianship was transferred in 1958 to the Chancery Court of Newton County (the adjacent chancery district), Chancellor Noble of that county continued to supervise administration of the guardianship and to approve annual accounts until his successor, Chancellor L. B. Porter, began his service as chancellor in 1963. Thereafter annual accounts were approved by Chancellor Porter until the guardian’s discharge in 1967. The ward’s estate had a value of $163,563.-31, when Neville qualified as guardian in Newton County; when he was discharged, it had a value of $193,722.24. As will be later discussed, with certain adjustments, the aggregate expenditures of Neville as guardian for the ward, both expressly authorized and not authorized but approved on annual accounts, were within the income of the ward’s estate.
Interpreting the statutes, the chancery court held that the guardian of an adult incompetent may not incur liability for and bind the estate of his ward unless and until a decree has been entered specifically authorizing the incurring of such liability, except in case of emergency or for an administrative expense. It held that the expenditure of any funds of the estate of an adult incompetent, without having first procured a decree authorizing it, except in an emergency, is not authorized under the law, and that the court had no power to subsequently ratify it.
The precise question is whether an expenditure of income by a guardian of a non compos mentis may be ratified and confirmed by the court after it is made, if it is a reasonable and proper expense in supporting, maintaining or educating the ward. Specifically, the chancellor held that an expenditure of income for the ward must be based on a prior order authorizing it, otherwise it cannot be allowed on an accounting except for emergencies; and that therefore the court has no power to ratify and confirm the income expenditure, even if reasonable, proper or necessary for support and maintenance.
Several preliminary issues can be disposed of at this point.
The chancery court erroneously held that payments of allowances directly to the ward and expenditures for his support and maintenance should be calculated on a monthly basis. The proper period for such calculation is annually. The entire statutory scheme of accounting for management of the estates of both minor and adult wards is on the basis of an annual accounting. Miss.Code 1942 Ann. §§ 425, 439; Frelick v. Turner, 26 Miss. 393 (1853); Brown v. Mullins, 24 Miss. 204 (1852). Although the decrees in question expressed the allowances on weekly or monthly periods, they must be considered on the basis of an annual accounting, and not as strictly limiting payments to a particular week or a particular month, as the trial court did.
Appellant’s guardian received in 1965 and 1966 several thousand dollars from insurance companies in settlement of claims for the ward arising out of automobile accidents. The guardian also paid considerable sums during those two years for medical and hospital expenses of the ward resulting from these accidents. These recoveries reduced the net amount which had to be paid from the ward’s estate for his benefit, and appellent is entitled to have these recoveries applied as offsets to those expenses for those two years.
The chancellor sucharged $1,748.-86 against Neville, which was money spent in connection with transfer of the guardianship in January 1958 from the Chancery Court of Wayne County to that of Newton County. The special chancellor for the Chancery Court of Wayne County executed a decree which directed the guardian to *832 file a copy of his final and supplemental account in the Wayne County guardianship in the Chancery Court of Newton County, together with a copy of the decree; and authorized him to pay court costs and certain fees. It directed that Neville should account to the Newton County Court for all assets received and disbursements made by him after January 10, 1958. This was done. Disallowing the payments authorized by this decree, the chancellor held that the claims had not been probated and allowed as claims against the estate. However, the decree of the special chancellor for Wayne County was sufficient authority for the guardian to pay these expenses incurred in transfer of the estate. They did not have to be probated and allowed as claims against it. Miss.Code 1942 Ann. § 441 (1956).
II.
Mississippi Code 1942 Annotated section 412 (1956), applicable to minor wards, expressly recognizes the rule established and followed in this state since its earliest days, that a guardian, without express advance authority from the court, may not encroach upon a ward’s capital, but that the court might allow the guardian credit for his expenditures within the income which were reasonably made for the ward, having due regard for his condition and future prospects, just as it would have made the allowance in advance. The last three lines of section 412 state, “ * * * [B]ut no guardian shall make any expenditure in excess of his ward’s income for the ward’s support and education without a previous order of the court or chancellor authorizing the same.”
Code section 413, first enacted in 1880, deals with the maintenance and education of a minor ward if he has a father and mother. The purpose of this statute is to require parents to support their minor children, if they have the means to do so, even though the minor ward may have a separate estate. Payments from both income and capital under these circumstances must have a prior order.
The power of the chancery court to approve and ratify expenditures by a guardian for the ward from income, although without prior order, and the lack of power to do this without a prior order for expenditures from corpus has long been established in this state. Williams v. Bonner, 79 Miss. 664, 31 So. 207 (1902); Dalton v. Jones, 51 Miss. 585 (1875); Wiggle v. Owen, 45 Miss. 691 (1871); Gilbert v. McEachen, 38 Miss. 469 (1860); Brown v. Mullins, 24 Miss. 204 (1852); Austin v. Lamar, 23 Miss. 189 (1851).
Brown v. Mullins, 24 Miss. 204 (1852) summarized the long standing rule applicable to both minors and n. c. m.’s:
By the law of this State, a guardian has no right to exceed the income of the ward’s estate, without authority of the probate court for so doing, in the education and maintenance of the ward. Hutch.Code, 505, § 131. But he should be allowed all reasonable and proper expense and charges incurred by him in educating and maintaining the ward, to the extent of the income of the ward’s estate, without any special order of the court in relation thereto; and whether such expenses and charges are reasonable and proper or not, will depend upon the future situation, prospects, and destination of the ward; all of which are proper subjects for the consideration of the court, in settling and allowing the account of the guardian. (24 Miss, at 205).
Mississippi Code 1892 section 2196 added for a period of only two years a provision prohibiting a guardian from making any expenditure out of income or corpus until after an order by the court. Apparently the chancellors and attorneys of this state made it known to the Legislature that this provision was impractical. It was repealed by Mississippi Laws 1894, chapter 57, which also amended Code 1892, section *833 2197, so that the clause stating that the court “shall settle” the sum to be expended was amended to read “may, at discretion, settle the sum * * * ” The 1894 law was apparently an expression of legislative intent not to require a guardian to obtain prior orders for every expenditure within income. The statutes concerning maintenance and education of minor wards have been brought down to date in substantially the same form as enacted in 1894. Miss. Code 1942 Ann. § 412 (1956).
Although the 1894 act repealed Code 1892 section 2196, prohibiting expenditures from income without a prior order, it left in effect Code 1892 section 2220, the predecessor of present Code 1942 section 440, including the first sentence, which states that it is the duty of the guardian to maintain his ward, “after obtaining an order of the court fixing the amount.” This may have been an oversight.
By Mississippi Laws 1896, chapter 97, the Legislature changed the earlier provision that a guardian of an n. c. m. should account in the same manner as guardians of minors, and provided' that the former should thereafter account in the same manner as executors and administrators. The question is whether the 1896 law by itself reflects an intent to change the previously recognized authority of an n. c. m.’s guardian to expend income without a precedent court order, if it is later approved. At the previous session, the same legislature had just repealed the law that would have accomplished that purpose. The 1896 amendment was probably intended to have no effect on the authority of a guardian of an n. c. m. to expend income. Its apparent purpose was to provide that exempt property of an adult ward should not be used for payment of his debts, and that claims against his estate arising prior to appointment of his guardian were not to be paid until they were probated, just as though the ward were deceased. In opening a guardianship for a minor, there was no reason to provide for exemption from prior debts, publication of notice, or probating of claims, since Code 1892 section 2222 already directed that accounts of a minor’s guardian should be examined, approved and allowed in the same way as accounts of executors and administrators.
In short, there is no clear evidence of a legislative intent to again restrict the chancellor’s power, recognized in earlier decisions, to later ratify and approve maintenance expenditures by guardians of adults within the estate’s income. There have been no substantial changes in the language of Code 1892 section 2220 since the 1896 amendment and up to Code 1942 section 440.
A related statute expressive of legislative intent is the 1962 act providing for the appointment of conservators of persons who by reason of advanced age, physical incapacity, or mental weakness are incapable of managing their own estates. Miss. Code 1942, Ann. §§ 434-01 to 434-10 Supp.1970). Section 434-05 provides that the “conservator shall have the same duties, powers and responsibilities as a guardian of a minor, and all laws relative to the guardianship of a minor shall be applicable to a conservator.” There would appear to be no reasonable basis for distinction between conservators and guardians of adults with reference to expending the income of the estate.
At best, this legislative history of Code 1942 section 440 indicates a legislative intent to retain the rule permitting the court to later approve an expenditure from income by the guardian of an adult which was made without a prior order. At worst, the legislative history is ambiguous, and on the entire record, inconclusive.
III.
The principal question is whether an expenditure of income by a guardian for an adult non compos mentis may be ratified and approved by the court after it is made, if the expenditure is a reasonable and proper expense in supporting, maintaining or educating the ward.
*834 The chancellor held that an expenditure of income for an adult n. c. m. ward must be based on a prior order authorizing it, otherwise it cannot be allowed on an accounting except for emergencies; and that therefore the court has no power to ratify and approve the income expenditure, even if reasonable, proper or necessary for support and maintenance. In this we think he erred.
The only statutory provision tending to support the interpretation adopted by the chancery court is the first sentence of Code 1942 section 440:
It shall be the duty of the guardian of persons mentioned in the aforesaid section to improve the estate committed to his charge, and to apply so much of the income, profit or body thereof as may be necessary for the comfortable maintenance and support of the ward, and of his family, if he have any, after obtaining an order of the court fixing the amount.
Although the last clause states “after obtaining an order of the court fixing the amount,” section 440 does not say that the court cannot ratify and approve a reasonable expenditure from income after the expenditure is made. It does not say that an expenditure from income not previously allowed is void and cannot be credited to the guardian as a proper expense under any circumstances. It affirms, in effect, that the only way the guardian can protect himself absolutely from a later contest of the reasonableness and propriety of the expenditure from income is by obtaining a prior order. In short, where the n. c. m. guardian fails to obtain a prior order approving a payment for his ward from income, he must risk its disallowance by the court if the court finds on substantial evidence that it was unreasonable or improper in supporting, maintaining, or educating the ward. This interpretation is consistent with the terms of code section 440, with the legislative history of guardian and ward in Mississippi, and with the early, large body of case law on this subject.
The most recent decision referring to this issue is in accord with that interpretation. Deposit Guaranty Bank & Trust Co. v. Mangum, 172 Miss. 443, 160 So. 386 (1935), involved the final accounting of a guardian for an adult n. c. m. There were expenditures in large amounts from capital of the estate without any prior orders. The chancellor denied the petition of the successor guardian to surcharge. This Court reversed, and held that the guardian of an adult n. c. m. cannot expend capital without a prior order of the court under Code section 440; and that the court cannot ratify and approve expenditures from capital made without a prior order. By way of decision, the Court stated:
In order to expend more than the income of the estate it is necessary for the guardian to secure an order of the court prior to such expenditure. Chapman v. Pentecost, 161 Miss. 600, 137 So. 539, in which it was held that a precedent order of the court or chancellor is indispensable in determining whether the guardian shall bear the expenses of a ward whose parents are living. It is true this decision was rendered in a case where a minor was involved, but the same rule is applied as to others. The statute plainly requires a previous order of court. (172 Miss. at 449-450, 160 So. at 387; emphasis added).
In summary, a guardian of a non compos mentis has a reasonable area of discretion in determining what part of the income of his ward should be spent for support, maintenance and education. Previously unauthorized but reasonable and proper expenditures from income for the n. c. m. ward may be ratified and approved by the court after they are made, either by special order or on the annual or final account. The chancery court has the power to ratify and approve such expenditures. However, the only way the guardian can *835 protect himself absolutely (except for fraud) from a later contest of reasonableness and propriety of the expenditure from income is by obtaining a prior order. Where he fails to do so the guardian must risk disallowance by the court of the income expenditure, if it-was not a reasonable and proper expense in supporting, maintaining or educating the ward.
Accordingly, the chancery court erred in concluding that an expenditure by the guardian from income, without previous express authority, is invalid and cannot he ratified and approved by the court.
The rule which we have adopted is in accord also with the general rule in other jurisdictions. 39 Am.Jur.2d, Guardian and Ward § 70 (1968) states:
A guardian may use the interest and profits of his ward’s estate for the support and education of his ward and may obtain credit therefor upon the rendition of his account, even though, as a general rule, such expenses were incurred without previous authorization by the court.
The same text in section 72 states:
As a general rule, however, even though prior authorization therefor was not obtained, a guardian will be allowed credit in his accounting for judicious expenditures made in good faith from the income of the ward’s estate, and the courts of some of the jurisdictions adhere to the view that in a proper case a guardian may, without prior order of court, expend the principal of a ward’s estate for his maintenance or education.
See also Annot., 130 A.L.R. 113, 117 (1941).
In 39 C.J.S. Guardian and Ward § 88, pages 155 — 156 (1944), it is stated:
* * * [Ojrdinarily where a court order is obtained authorizing particular expenditures the guardian is protected, and the expenditures cannot be questioned, except for fraud, in the settlement of the guardian’s final account. As a general rule a prior authorization by the court is not necessary, since the court may, by allowing the credit or otherwise, approve or ratify a previously unauthorized expenditure. Obviously, however, a guardian who proceeds with the management of the estate and makes expenditures without a previous court order faces the hazard that the court afterward may not ratify or approve such acts.
IV.
When the expenditures for this ward are analyzed and proper adjustments and allowances are made, it is clear that in no year of Neville’s guardianship did he exceed the income of the estate. Appellees in their brief do not dispute appellant’s figures or the adjustments submitted by appellant in his brief and reflected in the record. All payments by the guardian have been accounted for in his annual and .final accounts by proper vouchers. Since expenditures were within income, a portion of which were authorized by prior orders, the next question is whether the chancellor on undisputed evidence should have ratified and approved expenditures for support and maintenance made without prior orders, but which were reported and approved in the annual accounts and were within the income of the estate. In the first Neville case, we held that annual accounts approved by the chancellor are pri-ma facie correct. There is no substantial evidence in the record rebutting this prima facie case as to the reasonableness and propriety of the reported expenditures within the income.
Moreover, on the issue of whether the expenditures were reasonable and proper in supporting and maintaining the ward, consideration must be given to the fact, as found in first Neville, that “the guardian has served ably and well under trying circumstances.” 211 So.2d at 826. This record also supports that finding. Further, the funds of the estate are the property of the ward, an adult, and he is entitled reasonably to live within his means *836 and in accord with the standard of living of a person with the income and estate equivalent to that of the ward’s. Consideration must also be given to the volatile temperament, personality and peculiar characteristics of Kelso, resulting from his severe mental illness. Putting it mildly, Kel-so is erratic, highly emotional, and possessed of grossly exaggerated eccentricities. We recognize that the ward benefited from some specific, unusual expenses in his behalf, but in appraising their reasonableness, his needs and temperament are relevant. Considering the difficulties with him under which the guardian labored solicitously, we think that he discharged his duties well and was compensated for his efforts with modest fees.
We conclude that the chancery court erred in failing to ratify and approve as reasonable and proper the expenditures within income which the court had not précedently authorized. On the entire record, and considering the totality of the evidence, the petition of appellees to surcharge and falsify the ten annual accounts and the final account is dismissed as without merit, and judgment is rendered here approving the final account of Neville as guardian. Judgment is also rendered here awarding to the CPA firm of Rea, Shaw, Griffin and Stuart a fee of $500 for their services.
Our prior opinion held that on remand and accounting “the guardian and his attorneys are entitled to an appropriate fee for their services.” Nevertheless, although allowing a fee of $19,000 to other attorneys for legal services rendered up to removal of the original guardian, the chancellor disallowed any further fee to appellant and his counsel, holding that they had been amply reimbursed. They have not been compensated for making the final account and its detailed defense as reflected in this record. Miss.Code 1942 Ann. §§ 427, 429 (1956). Appellant and his attorneys are entitled to reasonable fees therefor. This cause is remanded to the chancery court for the purpose of hearing evidence and fixing reasonable fees for the guardian and his attorneys.
Reversed and judgment rendered here for appellant dismissing petition to surcharge, and cause remanded solely for determination of reasonable fees for guardian and his attorneys.
All Justices concur, except GILLESPIE, P. J., who took no part.