972 So.2d 694 (2007)
In re the Appointment of a Conservator for Woodrow W. VINSON and Kernith B. Vinson: Harry Vinson, Appellant,
v.
William BENSON, Conservator, Appellee.
No. 2006-CA-00342-COA.
Court of Appeals of Mississippi.
May 22, 2007.
Rehearing Denied October 2, 2007.
*696 B. Sean Akins, Ripley, for Appellant.
William M. Beasley, Tupelo, Rebecca L. Hawkins, Jackson, for Appellee.
Before KING, C.J., IRVING and ROBERTS, JJ.
KING, C.J., for the Court.
¶ 1. Harry Vinson appeals the chancellor's decision approving the conservator's final accounting of the estate of Kernith B. Vinson and discharging the conservator, William Benson.

FACTS
¶ 2. In 1996, two petitions were filed with the Chancery Court of Lee County, Mississippi, requesting a conservatorship for Woodrow W. Vinson and Kernith B. Vinson and their estates. The first petition, filed by their son, Harry Vinson, requested that he be appointed conservator for his parents and their estates. The second, filed by the Vinsons, nominated their daughter, Rita Vinson, to serve as conservator. The chancery court appointed a temporary conservator. Following protracted litigation between the parties, in March 1999, the issue of a permanent conservator came before the chancellor, who held a hearing on the matter.
*697 ¶ 3. At the time of the hearing, Rita notified the chancellor that she no longer wished to be considered for appointment. Harry, however, testified and called numerous witnesses to testify as to his fitness to serve as conservator. Woodrow was in extremely poor health in March 1999 and was unable to testify, but Kernith testified that she adamantly opposed the appointment of her son as conservator. The chancellor found that Harry was not qualified to serve as chancellor due to his past actions, which included transferring his parents' assets to himself, defying court orders, refusing to return his parents' money, neglecting their physical needs, and preventing his mother and sister from visiting Woodrow in the hospital. In accordance with Mississippi Code Annotated Section 93-13-21 (Rev.2004), the chancellor appointed William Benson, the Chancery Clerk of Lee County, Mississippi, as conservator of the persons and estates of Woodrow W. Vinson and Kernith B. Vinson on March 19, 1999.
¶ 4. Woodrow died on September 2, 1999. William Benson was appointed administrator of his estate and presented a will for probate to the chancery court. He also continued to serve as conservator over the person and estate of Kernith. Benson testified that he spent approximately three to four hours a week handling issues arising from that appointment.
¶ 5. Kernith's health was poor. Although her daughter, Rita, lived with her parents from a period that pre-dated the conservatorship, due to health problems of her own, she became physically unable to provide the type of daily assistance that Kernith required. Kernith had expressed a wish to stay in her own home rather than enter a nursing home, but fulfilling that wish required around-the-clock care.
¶ 6. To provide for Kernith's wishes required additional monies. In October 2002, Benson filed a petition with the chancellor, requesting permission to sell some of the property of the estate in order to secure funds for Kernith's care. Benson submitted an accounting of expenses paid and income received from the date of his appointment. The chancellor heard the petition on January 13, 2003, and in an order dated January 30, 2003, granted Benson permission to sell certain property in the estate and acquire a home-equity loan to repay some $6,000 that Benson personally had expended for Kernith's care. In accordance with that order, Benson acquired the additional funds and provided around-the-clock care for Kernith until her death on August 14, 2003.
¶ 7. On July 6, 2005, Benson filed his petition for a final accounting and discharge. A hearing was held on October 4, 2005. Both Harry and Rita were present, with each represented by counsel. Rita did not oppose the final accounting and closing of the conservatorship, but Harry did.
¶ 8. Harry's attorney questioned Benson regarding annual accountings, an initial inventory of the estates following his appointment, appraisals on the real property in the estates, payment of the property taxes, failure to obtain insurance on all of the properties, alleged waste of the estate, and failure to charge rent to Rita, who lived with her parents.
¶ 9. Harry also objected to the approval of the final accounting and discharge on the grounds that the administrator of his mother's estate was not present. At the time of the hearing, the Sheriff of Lee County had unofficially been appointed to administer the estate, but the order appointing him had not been signed. Harry argued that nobody was present to represent the interests of the ward. The chancellor determined that because both heirs to the estate were present, the ward's *698 interest was not compromised by proceeding with the hearing.
¶ 10. The chancellor approved the final accounting and discharged Benson as the conservator. In her opinion, the chancellor stated that "[t]he Petitioner has performed extraordinary services for the conservation of the Wards' property even with the interference of Harry and his failure to abide by previous orders of this Court." The chancellor further held that "the distributions itemized in the Accounting were necessary for the welfare and benefit of the Wards during the accounting period" and that Harry's objections were without merit. The chancellor also approved attorney's fees in the amount of $10,000 and conservator's fees in the amount of $5,000.
¶ 11. On appeal, Harry challenges the chancellor's order granting the petition and awarding fees. He raises the following issues:
(1) The chancellor erred in approving the accounting and discharging the conservator for the following reasons: (a) the estate was a necessary party and was not represented at the hearing; (b) the conservator failed to take an inventory of the estate within three months of his appointment; (c) the conservator failed to file annual accountings; and (d) the conservator failed to properly care for the real property contained in the estate.
(2) The chancellor erred in awarding fees to the conservator and to the attorneys because the conservator should not have been discharged and because the conservator and attorneys were not entitled to fees.
Finding no error, this Court affirms.

STANDARD OF REVIEW
¶ 12. In reviewing a chancellor's findings of fact, this Court "will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous." Bardwell v. Bardwell (In re Bardwell), 849 So.2d 1240, 1245(¶ 16) (Miss.2003) (citation omitted). "Whenever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed." Id. (citations omitted). Accordingly, "[t]he standard of review employed by this Court for review of a chancellor's decision is abuse of discretion. However, for questions of law, the standard of review is de novo." Creely v. Hosemann, 910 So.2d 512, 515(¶ 11) (Miss.2005) (citations omitted).

ANALYSIS
I. The chancellor did not err in approving the final accounting and discharging the conservator.
¶ 13. Harry argues that the chancellor should not have approved the final accounting and discharge of the conservator for the following reasons: (1) the estate was a necessary party and was not represented at the hearing; and (2) the conservator failed to uphold his duties as required by statute. The Court addresses each of these issues in turn.
A. The chancellor did not err in proceeding with the hearing despite a lack of representation for the estate.
¶ 14. At the hearing, Harry argued that his mother's estate was not represented. He requested a continuance so that the sheriff could attend the hearing on behalf of the estate, as a representative of the estate and a necessary party to the proceeding. He argued that without a representative of the estate present at the hearing, the interests of the creditors and others with an interest in the estate would *699 not be represented. Additionally, he argued that any claims that the estate might have against the conservator would be res judicata following the chancellor's decision, leaving the administrator with no recourse.
¶ 15. Benson argued that the sheriff was not yet formally appointed to serve as the administrator of Kernith's estate; therefore, no representative existed, and the sheriff was not a necessary party. He further argued that because both heirs with the potential to inherit under the wills of both Woodrow and Kernith were present, there was no need to have the sheriff, who was not yet the administrator and who had no working knowledge of the complexities of the underlying facts of the case, present for the hearing. Rita took no position on the sheriff's attendance.
¶ 16. The chancellor overruled the motion and proceeded with the hearing. On appeal, Harry argues that Mississippi Code Annotated Section 93-13-77 (Rev. 2004) requires that the ward must have notice and opportunity to review the proposed final accounting and raise any objections to the approval of the final accounting. He further argues that the sheriff had already been appointed as administrator of his mother's estate and that the chancellor ruled that the administrator lacked standing to participate in the hearing.
¶ 17. Harry misstates these facts in his appellate brief. At the hearing, his counsel acknowledged that the sheriff "has not been formally appointed" to serve as the administrator. Counsel for Rita also represented to the chancellor that the order appointing the sheriff had not yet been signed. The chancellor concluded that the estate had no representative who could be joined as a party and opted to move forward with the hearing. The chancellor did not hold that an administrator of the ward's estate would lack standing. She simply acknowledged that the estate had no representative.
¶ 18. This Court holds that the chancellor did not err in proceeding with the hearing to approve the final accounting and discharge the conservator. Mississippi Rule of Civil Procedure 19 sets forth the standards for determining the joinder of necessary parties. The rule reads in pertinent part as follows:
(a) Persons to Be Joined if Feasible. A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:
(1) in his absence complete relief cannot be accorded among those already parties[.]
. . . .
(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable.
M.R.C.P. 19. In this case, joinder was not feasible because no person had been appointed to represent the estate of Kernith. Although the party to be joined  the administrator of the estate of Kernith  existed in an abstract legal sense, the chancellor could not compel a person to appear on behalf of that party because no such person existed at the time of the hearing. Thus, the chancellor had the discretion to determine whether the action should proceed.
¶ 19. The Court finds no error in the chancellor's determination to proceed because the Court is satisfied that the estate suffered no prejudice as a result of the chancellor's decision. First, as previously *700 noted, all of the legal heirs of Kernith were present and represented by counsel. Rita had no objection to the final accounting. Harry did object, and had the opportunity, through counsel, to argue those objections and to cross-examine Benson regarding his actions as the conservator. Further, a chancellor "is the `ultimate guardian' of wards." Bardwell, 849 So.2d at 1246(¶ 19) (citing Jackson v. Jackson, 732 So.2d 916, 920(¶ 5) (Miss.1999)). Having reviewed the transcript of the hearing, the Court is satisfied that the chancellor conducted the hearing in a manner consistent with her duty to the estate.
B. The chancellor did not err in holding that the conservator adequately performed his duties to the person and estate of Kernith B. Vinson.
¶ 20. Harry argued that Benson had failed to perform his duties as conservator in the following ways: (1) failure to take an inventory of the estate within three months of his appointment; (2) failure to file annual accountings; and (3) failure to properly care for the property contained in the estate. Counsel for Harry cross-examined Benson regarding these issues. The chancellor found these objections to be without merit and held that Benson "has performed extraordinary services for the conservation of the Wards' property even with the interference of Harry and his failure to abide by previous orders of this Court."
1. Duties of the conservator with respect to the estate.
¶ 21. Harry questioned Benson about his failure to complete an inventory of the property of the estates of his parents within three months of his appointment, as required by Mississippi Code Annotated Section 93-13-33 (Rev.2004). Benson testified that the temporary conservator initially appointed by the chancery court had taken an initial inventory, and he had a copy of that document. Harry then questioned Benson about his failure to file annual accountings with the court. Benson admitted that he had not filed an annual accounting for the years 1999-2002, until it became necessary to petition the court for permission to sell some of the property of the estate to create additional income for Kernith's care. At that time, however, Benson testified that he presented a full accounting to the court. Thereafter, Benson did not submit another annual accounting until he submitted the final accounting for approval. Finally, Harry questioned Benson regarding his failure to pay property taxes, to obtain appraisals of the real property, and to maintain insurance on some of that property. Benson testified that he sometimes delayed payment on the property taxes because Harry, who had collected rents on those properties and refused to turn them over to the estate and who also owed the estate a substantial sum of money, paid the property taxes. Only when Harry was delinquent in doing so did Benson make those payments. Benson further testified that he was in the process of obtaining appraisals on all of the real property when Kernith died. At that point, Benson accepted the completed appraisals and canceled the incomplete ones. Additionally, Benson stated that he maintained insurance on the properties that carried insurance at the time of his appointment. Finally, Harry questioned Benson generally about the issue of waste and cited the $6,000 monthly nursing bill and Rita's rent-free residence at her mother's home. Benson responded that Rita lived with her parents prior to the conservatorship, that she remained there at her mother's request, and that she provided assistance to her mother and to Benson by coordinating her mother's care schedule.
*701 ¶ 22. The chancellor concluded that Benson had adequately met his duties as a conservator and approved the final accounting. The Court holds that the chancellor's decision to approve the final accounting and discharge the conservator was squarely within her discretion.
¶ 23. Mississippi Code Annotated Section 93-13-67 does require a conservator to file an annual accounting, and the failure to file such annual accountings is a breach of the conservator's duties. See In re Chambers, 458 So.2d 691, 693 (Miss. 1984) (failure of an executor to file annual accountings[1]). However, neither the statute nor case law indicates that the failure to file accountings is fatal to the approval of a final accounting. In Chambers, the Mississippi Supreme Court held that the failure to file annual accountings impacted only the amount of fees payable to the executor and attorneys. Accordingly, the chancellor's decision to approve the final accounting and discharge Benson despite his failure to file annual accountings is not an abuse of discretion.
¶ 24. With respect to the appraisals and insurance policies, Mississippi Code Annotated Section 93-13-41 (Rev. 2004) requires only that the conservator "not commit waste on the real estate of his ward." Appraisals are not required. Moreover, the statute does not require that the conservator expend income or capital of the estate to obtain insurance policies. In this case, Harry failed to establish that there was a need for insurance. He presented no evidence of the value of the properties to establish that insurance was a reasonable expense. Harry did raise the issue of a fire that damaged one of the rental properties in the estate, but he later conceded that the damage occurred after the death of Kernith, at which time the conservatorship ceased.
¶ 25. Harry also raised the issue of failure to pay the property taxes on some of the rental properties. Benson testified that because Harry continued to collect rents and to owe the estate a large sum of money and because Harry unilaterally paid the property taxes, Benson often delayed payment to allow Harry the opportunity to do so. Benson argues in his appellate brief that by his actions, he saved the estate the expense of the property taxes.
¶ 26. The chancellor considered all of this testimony and found that Harry's arguments were without merit. Benson's undisputed testimony that he maintained the status quo on the real property parcels with regard to the property tax and insurance policies constitutes substantial evidence on which the chancellor could rely in approving the final accounting and discharging Benson. Accordingly, the chancellor's decision was not an abuse of discretion.
2. Duties of the conservator with respect to the ward
¶ 27. Harry also argues that Benson failed to properly discharge his duties as conservator with respect to the expenses of Kernith's care. Harry contends *702 that although the chancellor approved the 2003 petition for the sale or encumbrance of certain real property in the estate for expenditure on Kernith's care, the chancellor did not approve the amount of such care. Harry argues that the $6,000 monthly expense for around-the-clock care for his mother was excessive and that Benson should be held personally liable for that expense.
¶ 28. Mississippi Code Annotated Section 93-13-38 provides that it is the duty of a conservator "to apply so much of the income, profit, or body thereof as may be necessary for the comfortable maintenance and support of the ward and of his family, if he have any, after obtaining an order of the court fixing the amount." Miss.Code Ann. § 93-13-38(2). Applicable case law, however, has consistently held that the chancellor may later ratify any such expenditures that were made without prior approval. See United States Fidelity & Guar. Co. v. Conservatorship of Melson, 809 So.2d 647 (Miss.2002); Neville v. Kelso's Guardianship, 247 So.2d 828 (Miss. 1971).
¶ 29. In the case sub judice, Benson sought permission to create the necessary cash flow in the estate to provide the required care for Kernith. It appears that the chancellor also implicitly approved the $6,000 monthly expenditure because she permitted Benson to reimburse himself in the amount of $6,000 for money he personally expended for her care following the filing of his petition. However, even if the chancellor did not approve the $6,000 expenditure in the order granting Benson's 2003 petition, she certainly had the authority to ratify the expenditure. It appears, from the order discharging Benson from his duties that the chancellor did ratify the expense, and this Court finds that it was within her discretion to do so.
¶ 30. Based on Benson's testimony and his final accounting, the Court finds that there was substantial evidence to support the chancellor's decision to overrule Harry's objections and discharge Benson as conservator. Accordingly, the chancellor did not abuse her discretion in this case.
II. The chancellor did not err in awarding fees in the amount of $5,000 to the conservator and in the amount of $10,000 to the attorneys representing the estate.
¶ 31. The chancellor awarded Benson $5,000 for his services. The chancellor approved an award of $10,000 for the attorneys who provided services to Benson in carrying out his duties. Harry argues that these fees were not justified in light of what he terms Benson's "negligence" in managing the estate.
¶ 32. Benson was appointed conservator in 1999, following a determination that Harry was not a suitable conservator. Benson testified during the hearing that this appointment was "the worst thing I have done in 14 years." Benson also testified that, with the exception of a six-month period in 2002 when Kernith was in relatively good health, he spent three to four hours a week between March 1999 and November 2004 handling the responsibilities of this conservatorship.
¶ 33. The chancellor noted in her order that Benson "performed extraordinary services for the conservation of the Wards' property even with the interference of Harry Vinson and his failure to abide by previous orders of this Court." By this statement, it is clear to this Court that the chancellor considered Benson's services in their totality in granting his request for fees. Based on the brief history of this case provided in the limited record before the Court, the Court agrees that Benson served ably as conservator under difficult circumstances. Accordingly, the Court finds that the chancellor did not abuse her discretion in awarding Benson fees in the amount of $5,000 for his services.
*703 ¶ 34. The attorneys for the conservatorship submitted an itemized bill in the amount of $15,691.66 for fees and disbursements rendered between August 2000 and September 2005. Those fees included services rendered in defending the conservatorship against Harry's appeal of the chancellor's decision appointing Benson as conservator. The chancellor did not grant the attorneys the entire amount of fees requested. Instead, she awarded $10,000 in fees. Again, it appears that the chancellor considered all of the circumstances of the case before awarding the attorneys less than the amount requested. Accordingly, the Court finds that the chancellor did not abuse her discretion.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING AND BARNES, JJ., NOT PARTICIPATING.
NOTES
[1] While Chambers addresses an executor's failure to file annual accountings and not a conservator's duty, pursuant to Mississippi Code Annotated Section 93-13-259 (Rev. 2004), a "conservator shall have the same duties, powers and responsibilities as a guardian of a minor, and all laws relative to the guardianship of a minor shall be applicable to a conservator." Under Mississippi Code Annotated Section 93-13-67, guardians of minors are required to make annual accountings for receipts and disbursements. Likewise, Mississippi Code Annotated Section 91-7-277 (Rev.2004) contains an almost identical requirement for annual accountings. Accordingly, case law for executors and administrators is applicable to conservators on this point.