WILKINS *v.* BANCROFT, et al.

No. 42864 January 27, 1964 160 So. 2d 93

*Joe N. Pigott,* McComb; *Mounger & Mounger,* Tyler-town, for appellant.

*B. D. Statham,* Magnolia; *Norman B. Gillis, Jr.,* Mc-Comb, for appellees.

McELROY, J.

This is an appeal from a final decree of the Chancery Court of Pike County, Mississippi, in which the court awarded the appellee a judgment of $25,000, the same being the difference in the amount owed for the purchase of an assignment of an oil, gas and mineral lease and the amount actually paid the appellant by the appellee for said purchase.

Joe C. Bancroft, Frederick A. Kullman, and Joseph Sager filed a bill of complaint against Edwin L. Wilkins, appellant, in the Chancery Court of Pike County in which the complainants averred that ''in the latter part of April, 1960, or the early part of May, 1960, the complainants, each acting by and through complainant Joseph C. Bancroft, entered into a partnership agreement or joint venture'' in which the complainants and defendant proposed to purchase through Edwin L. Wilkins an assignment on an oil, gas and mineral lease on the Longino tract consisting of 640 acres in Lawrence County, Mississippi, which 640 acres had been leased to A. C. Barton and James S. Attaya on March 6, 1959.

The complainants alleged that Wilkins had represented that the lease assignment would be for a consideration of $75,000, and that it was agreed that the complainants would pay $37,500 or $12,500 for each one-sixth interest, and that Wilkins and his associates, who were his father and brother, would pay the other one-half, or $37,500; that Wilkins made demands on the complainants for their part of the consideration which was paid to Wilkins for application by Wilkins to the assignors on the total consideration; that pursuant to said payment the assignors on May 6, 1960, did execute an assignment which vested the record title thereto in Bancroft for a one-half interest, which interest was held by Bancroft in trust for the other complainants and the other one-half interest in Wilkins.

Complainants charged further that the true consideration for the assignment was in fact $23,500, and not $75,000; that false and fraudulent misrepresentations had been made by Wilkins to the complainants and prayed for an accounting by Wilkins as to the actual cost and judgment against Wilkins for the difference in one-half the amount of the actual cost and $37,500, the amount paid Wilkins by the complainants for transmittal to the assignors of the lease.

A general demurrer was overruled. A combined motion to strike and special demurrer pleading the statute of frauds was overruled. In response to a bill of particulars, the complainants filed a copy of an August 5, 1960 letter signed by Wilkins and Bancroft, which letter was said to have been dictated by both parties and was addressed to Samuel Lang, who, being the law partner of Fred Kullman, one of the complainants, appeared to own a one-twelfth interest (one-half of the one-sixth Kullman interest).

An amended bill of complaint was filed which named Samuel Lang as a complainant.

The defendant, appellant, answered under oath in which he denied all of the material allegations of the complaint, as amended, stating that he, individually, purchased the assignment of the lease from A. C. Barton and James S. Attaya and "re-sold" one-half interest in the same to Bancroft for $37,500; "that in order to avoid the unnecessary expense of separate assignments the defendant agreed that A. C. Barton and James S. Attaya place the name of Joseph C. Bancroft as a grantee to an undivided one-half interest in the assignment from the A. C. Barton and James S. Attaya"; and that he did not execute the memorandum — letter dated August 5, 1960. This letter was acknowledged before a notary public, Mrs. Gladys R. Summers, Mr. Bancroft's secretary.

The record contains a copy of the Assignment of Oil and Gas Lease executed on May 6, 1960 by James S. Attaya and A. C. Barton. This assignment, in consideration of $10, paid, and other good and valuable considerations, sold, transferred, set over, assigned and warranted unto Edwin L. Wilkins an undivided one-half interest and to Joseph C. Bancroft an undivided one-half, together with all rights and privileges accorded under said lease, subject to other leases on the property.

The letter of August 5, 1960 came about because the appellee was suspicious that something was wrong. He had tried to contact Mr. Wilkins for several months, and finally got him in his office. In the meantime, Bancroft had employed a detective agency, and they had set up a dictaphone in his office, which recorded the conversation. This letter was dictated there in reference to their conversations, and stated in part:

"Dear Sam:

"We feel it advisable to bring you up-to-date on the above matter. Ed Wilkins is sitting in my office with me and we both wish to report as follows:

"We are in the process of making individual assignments of their respective interest, (1/6) each to the six investors, namely, T. B. Wilkins; Dr. Tom Wilkins; Ed Wilkins; Joseph Sager, Fred Kullman — Samuel Lang, and Joseph B. Bancroft, as a matter of individual protection. Copies of the original assignment will be forwarded along with this assignment showing all recordations data, with all regular documentary stamps attached thereto. You will note documentary stamps are attached at the rate of $.55 per $500.00, or a total of $82.50, representing the purchase price of $75,000.00. Ed Wilkins was kind enough to furnish us on June 17th a true photostat of the face of the draft showing the $75,000.00 payment. He has advised he will complete the reverse side."

Wilkins denied signing this letter, even denied being in the office of Bancroft at the time, and denied ever making any statement such as this. However, Bancroft, his secretary, the detective, and also an attorney named Yates were present. They testified that this conference did actually occur.

Many exhibits were introduced with Wilkins' name to them, letters and other evidence such as cancelled checks and a copy of a $75,000 check payable to Barton and Attaya, which he denied making. He claimed they were all forgeries. It appears that Wilkins would acknowledge anything he thought was to his advantage and deny anything he thought was to his disadvantage. The evidence showed that Wilkins paid only $25,000 for the lease.

This case was tried in part before three chancellors. One of the chancellors died during the latter part of the original trial. The case was finally tried before Chancellor Watkins, and he adjudicated that Bancroft and Wilkins in April 1960 entered into an agreement to jointly negotiate for the purchase of the Longino lease from Barton and Attaya, which agreement con-

stituted a joint adventure between the parties, Bancroft and Wilkins, with both parties concluding that the acquisition and management of the lease was for the joint business and enterprise of the parties and their mutual benefit and with the understanding that they would share equally in the profits and losses; that the cost of the assignment was $25,000 or an actual cost to each party of $12,500, but that Wilkins falsely represented the cost to be $75,000 and was paid by Bancroft accordingly for payment to the assignors; that Wilkins is indebted to Bancroft in the amount of $25,000; and, finally, that the joint venture was between Wilkins and Bancroft, and the matter of any adjustments with his associates was the individual responsibility of Wilkins and Bancroft. Judgment was rendered for plaintiff, appellee, in the amount of $25,000, and this appeal is prosecuted from that final decree.

■■ ■ We believe from the evidence in this record that the chancellor was fully justified in his findings, both as to the law and the facts. The tape recording and the transcript thereof were admissible. No error was committed in the admission of other documentary evidence objected to. The Supreme Court of Mississippi has approved admission of tape recordings as evidence. Ray v. State, 213 Miss. 650, 57 So. 2d 469; see also 58 A.L.R. 2d 1026-27.

■■ ■ The joint adventure relationship which the chancellor found to exist imposed a confidential and fiduciary relationship between the parties, which required Wilkins to make a full and truthful disclosure to Bancroft as to the cost of the lease. See 92 C.J.S., Vendor and Purchaser, § 279, which states in part:

"While a joint purchase does not necessarily create a partnership, and separate purchases from the same vendor made by different persons without any agreement between them do not create any privity or trust relation between the purchasers, joint purchasers of

property occupy toward each other a fiduciary relation, and must act toward each other in fairness and good faith. One of such purchasers will not be permitted to make for himself any secret profit out of the transaction, as by misrepresenting to his associates the actual purchase price, . . ."

 The decree of the chancellor should be confirmed unless same is manifestly wrong. It is fundamental that the chancellor's finding on fact and his decision are not to be disturbed unless the same are manifestly wrong. See Griffith, Mississippi Chancery Practice, § 674, which states in part:

". . . It has therefore been the uniform rule that the chancellor's finding on the facts is reviewable on appeal only when manifestly wrong. And when two or more reasonable inferences are deducible from the facts is proof, the inference drawn and adopted by the chancellor will control on appeal. This rule has its foundation not only in the imperative operation of the constitutional ordinances mentioned; it has a further controlling reason in this: The opportunities afforded to the trial court are far better for arriving at correct conclusions and findings upon all the questions of fact. . . . The decision of the chancellor where the evidence is conflicting will not be disturbed on appeal, since he is better able to determine the truth of the matter than the appellate court."

The case is therefore affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Gillespie and Jones, JJ.,* concur.