# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01164-SCT

*IN THE MATTER OF THE ESTATE OF GLEN D. BAKER, SR., DECEASED: DOROTHY J. BAKER, EXECUTRIX*

*v.*

*GLEN D. BAKER, JR. AND GLENDA JEAN BAKER MURPHY*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/05/1998 |
| TRIAL JUDGE: | HON. STUART ROBINSON JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROSS R. BARNETT, JR. |
| ATTORNEYS FOR APPELLEES: | A. M. EDWARDS III |
| | T. CALVIN WELLS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 06/01/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/8/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. The Motion for Rehearing is denied. The original opinions are withdrawn, and these opinions are substituted therefor.

### STATEMENT OF THE CASE

¶2. This family dispute arises from the Chancery Court of Hinds County, Mississippi. Glen D. Baker, Sr. died testate on September 19, 1995, and was survived by his children, Glen D. Baker, Jr. and Mrs. Glenda Murphy, and his current wife, Mrs. Dorothy J. Baker. Dorothy was co-named on a securities account with Glen, Sr. at the time of his death. His children argue that the securities account should pass through the will in equal parts to Glen, Glenda, and Dorothy. Dorothy, not being satisfied to share equally, claims the entire account should pass to her. She argues that as a joint tenancy, it was created with rights of survivorship. The Chancellor ruled the account to be a tenancy in common and not a joint tenancy. He therefore ruled that half the account should be distributed to Dorothy with the remainder passing through the will. From this decision, Dorothy appeals assigning as error:

> **I. WHETHER THE JUDGMENT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND LAW.**

> **II. WHETHER THE CHANCELLOR ERRED IN ADMITTING INTO EVIDENCE A**

**TAPE RECORDING ALLEGEDLY MADE BY THE DECEASED.**

**<u>STATEMENT OF THE FACTS</u>**

¶3. Glen, Sr. originally established the account with Richard Wilkinson at the McLarty and Company investment organization in 1989. Later, the McLarty organization was absorbed by Legg Mason. However, Richard Wilkinson, the Bakers' investment advisor at McLarty and Co., chose to move to Prudential Investments rather than Legg Mason. Paul Matlock was assigned the account at Legg Mason. Although no original documents remain, both Wilkinson and Matlock testified the account was set up as a joint tenancy with rights of survivorship. Thus, under their testimony the entire account should pass directly to Dorothy.

¶4. Glen Baker, Jr., and Glenda Baker Murphy, children of Glen, Sr. from another marriage, suggest their father never intended for the entire securities account to pass to Dorothy. At the trial, they offered hearsay evidence in the form of an audio tape which was admitted. On the tape, Glen, Sr. instructed that there was to be no fighting among his heirs and that the securities should be divided equally among Glen, Jr., Glenda, and Dorothy. Glen, Jr. and Glenda testified that Glen, Sr. repeatedly mentioned this tape, instructing them to follow it. Dorothy, on the other hand, testified that Glen, Sr. instructed her to dispose of the tape and stated that he was drunk when he made it.

¶5. Not surprisingly, Mrs. Baker's opinion regarding Glen, Sr.'s wishes in disposing of his property differs from that of the children. Dorothy believes the device fashioned to hold the couple's securities was a joint account with rights of survivorship. Upon Glen, Sr.'s death, she understood that all the accumulated money in the account would automatically pass to her regardless of the terms of his will. She claims Glen, Sr. described this situation to her before his death, and she relies on the testimony of Wilkinson and Matlock.

### I. WHETHER THE JUDGMENT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND LAW.

¶6. This Court will refuse to disturb findings of fact unless manifestly wrong or clearly erroneous. *Scharwath v. Scharwath*, 702 So.2d 1210, 1211 (Miss. 1997); ***Denson v. George***, 642 So.2d 909, 913 (Miss. 1994). However, questions of law on appeal will be reviewed *de novo*. ***Harrison County v. City of Gulfport***, 557 So.2d 780, 784 (Miss. 1990); ***Cole v. National Life Ins. Co.***, 549 So.2d 1301, 1303 (Miss. 1989). While we must review the actions of the Chancellor in admitting or denying certain evidence, the crux of the argument is whether there was a legitimate joint tenancy with rights of survivorship. If not, then the will shall solely govern the distribution of the estate. However, if there is a joint tenancy with an enforceable survivorship provision, then those assets under the joint tenancy will be distributed to the survivor immediately, outside of the dictates of the will. This is true because the will "is wholly incapable of supplanting in law the . . . joint tenancy instruments." ***In re Will and Estate of Strange***, 548 So.2d 1323, 1326 (Miss. 1989).

¶7. First, however, we note the actions of the court below. The Chancellor questioned Wilkinson as to the nature of securities accounts and took issue with him on several key points. The following exchange took place between the Chancellor and Wilkinson:

> Q. Let me ask you one question, Mr. Wilkinson, before you step down. Is it uncommon to issue stock in two names, so and so and so and so, without the use of the wording as tenants in common? Is it uncommon just to say in my name and so and so's name?

A. Judge, I wasn't aware of it until today, that it can be in two names just using the word "and" in there without any further clarification.

Q. The reason I'm asking, I guess I'll have to take judicial notice of the fact that I have bought it that way.

A. I think so. I think you can do it that way, but I just never fooled with it.

Q. I know you can, because I've owned it. But I usually lost money on it.

A. What did you do? Just you and your wife's name "and"?

Q. No. A fellow lawyer and I invested together- a male, before anybody gets any wrong ideas. But a friend of mine, who is a lawyer, and I had on more than one occasion invested in stock, and we've had it put in both names, just so and so and so and so.

A. Okay.

Q. And nobody ever said you can't do that.

A. No. I never said you can't do it, but I wouldn't have suggested it. I would have suggested that you-

Q. Well, I didn't want it with right of survivorship where he'd get it.

A. Well, that would have been a good time to use tenants in common so you could split it up.

¶8. The appellees contend that this action by the Chancellor was not improper since he did nothing more than take judicial notice. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." M.R.E. 201(b). When another lower court took judicial notice that the usual escrow practice is to put funds into an interest-bearing account, we held, "A trial judge must base his findings upon the evidence and testimony, and not upon his personal knowledge of the case." **Howard v. Clanton**, 481 So.2d 272, 276 (Miss. 1985)(citing **City of Jackson v. Lee**, 234 Miss. 502, 106 So.2d 892 (1958)). Likewise in this case, the Chancellor's personal experience with securities was an improper basis for judicial notice.

¶9. The result of the Chancellor's faulty judicial notice was to discount the testimony of the two investment advisors. The Chancellor in the instant case stated:

Now, yesterday I was amazed, to tell you the truth, at Mr. Matlock's testimony. He didn't seem to understand. I couldn't believe what I was hearing. He didn't seem to understand that in Mississippi people can own personal property as tenants in common, just as they can own real property that way. And he kept wanting to add words. The way this account is styled, the way it was set up, it is a clear tenancy in common, unless we can show by some other means, or it can be shown by some other means, that it was not the intention of Mr. Baker to enter into such a situation. Now, what other means did we have? We had a tape and we had a will.

¶10. Dorothy urges that the testimony of Wilkinson and Matlock is another means and is admissible as evidence to describe the "attendant circumstances" surrounding the creation of the account. See **In Re**

*Lewis's Estate*, 194 Miss. 480, 494, 13 So.2d 20, 25 (1943). Paul Matlock, Vice President of Paine Webber, testified that "the certificates were registered and did have the initials JTWROS on them." These initials are shorthand for joint tenancy with rights of survivorship. In addition, "[a]ll U.S. Trust certificates have those initials on them." In addition to discussing all of this with Mr. Baker, and labeling his personal record of the account with the initials, JTWROS, Matlock further testified that the Nuveen stock certificates, which Baker dealt in almost exclusively, had these same initials upon them.

¶11. Richard Wilkinson, the account originator, testified that he explained to the deceased the function of joint tenancies with rights of survivorship when asked about legal means to avoid tax liability. Accounts in this designation pass to the survivor automatically "without delay, probate, and legal expense." Wilkinson bolstered Matlock's testimony in response to cross-examination:

> Q. [T]hen you can't testify that he [Mr. Baker] knew you were treating it as a joint account with rights of survivorship.

> A. Of course I can. . . it was explained to him in that fashion and all these Nuveen certificates came in his and Mrs. Baker's name with JTWROS on there.

¶12. The question for us to determine then, is whether this information is sufficient to satisfy the requirements of a joint tenancy as opposed to a tenancy in common. A presumption of joint tenancy "does not apply . . . in the absence of expressed intent on the certificate to create such joint tenancy." *In re Estate of Holloway*, 515 So.2d 1217, 1222-23 (Miss. 1987). "[I]n absence of any survivorship provision, a joint tenancy will not be presumed . . . ." *In re Estate of Isaacson v. Isaacson*, 508 So.2d 1131, 1134 (Miss. 1987). However, precise form is not essential for the creation of a joint account with right of survivorship when formal deficiencies are balanced by definite proof of intention to create such an account. *Leverette v. Ainsworth*, 199 Miss. 652, 657, 23 So.2d 798, 799 (1945). "[W]hen there is a clear intention to create a right which embraces the essential elements of joint ownership and survivorship in respect to a particular . . . account, the intention, when lawfully evidenced, will be given effect and the survivor held entitled to the fund." *Stephens v. Stephens*, 193 Miss. 98, 101-02, 8 So.2d 462, 463 (1942). The use of initials in matters of law is not normally desirable. However, when certain initials, such as JTWROS, are used with such frequency as to give them a plain, unambiguous meaning in a given trade, we must accept and enforce them according to their commonly accepted meaning. As a result, we accept JTWROS to mean joint tenancy with rights of survivorship. It remains for us now to recognize the account in question as such if we can find lawful evidence or definite proof as required in *Stephens* and *Leverette*.

¶13. Dorothy supplied the court with Wilkinson's personal account record which makes use of the above initials. Unfortunately, some certificates were not introduced into evidence, though both brokers testified that they saw certificates with the same designation. Unfortunately for Dorothy, it is ownership of the account which controls here. While individual certificates were apparently marked with the initials JTWROS, the original account was not-at least Mrs. Baker could not prove that it was, and the burden was on her in this instance. Neither Wilkinson, who assisted Mr. Baker in establishing the initial account, nor Matlock could testify that he saw or that Mr. Baker executed a written account agreement establishing this account as one of joint tenancy with right of survivorship. Thus the chancellor did not manifestly err in concluding that Dorothy did not meet her burden of proof. The presumption in Mississippi for accounts of this nature is tenancy in common. Therefore, we are compelled to affirm the chancellor as finder of fact on this record.

¶14. The chancellor created his own standard to resolve the ambiguity between the two types of accounts, refused to recognize the value of the brokers' testimony, and took judicial notice based on personal knowledge. However, the ultimate result of his findings is correct. We must therefore affirm the decree of the court below for the reasons herein stated.

## II. WHETHER THE CHANCELLOR ERRED IN ADMITTING INTO EVIDENCE A TAPE RECORDING ALLEGEDLY MADE BY THE DECEASED.

¶15. We address this issue though the point is now moot. The Chancellor admitted into evidence an audio tape of Glen, Sr. instructing how he wished his assets divided. All parties agree that the tape is hearsay. However, Glen, Jr. and Glenda argue the statements fit within the "other exceptions" provision of the hearsay rule. M.R.E. 804(b)(5) states:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by the admission of the statement into evidence.

¶16. We have long accepted audio tapes as admissible evidence. *Wilkins v. Bancroft*, 248 Miss. 622, 160 So.2d 93 (1964); *Ray v. State*, 213 Miss. 650, 57 So.2d 469 (1952). Further, admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Sumrall v. Mississippi Power Co.*, 693 So.2d 359, 365 (Miss. 1997)(citing *General Motors Corp. v. Jackson*, 636 So.2d 310, 314 (Miss. 1992)); *Walker v. Graham*, 582 So.2d 431, 432 (Miss. 1991). The indicia of trustworthiness in this case were cemented by the concession of Mrs. Dorothy Baker, the party opposing admission, that the voice on the tape is that of her deceased husband and that she was told of the tape's existence by her husband prior to his death. The audio recorded statements of Glen, Sr. are probative of his state of mind on the date of the recording, and they explain his understanding of the joint accounts. Although the will is the only binding instrument relevant to the distribution of Mr. Baker's estate, we find that the Chancellor acted within proper bounds in admitting the tape into evidence.

## CONCLUSION

¶17. Though the Chancellor's analysis may be criticized on appeal, we cannot quarrel with his result. For the foregoing reasons, the judgment below is affirmed.

¶18. **AFFIRMED.**

> **PITTMAN AND BANKS, P.JJ., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J.**
>
> **PRATHER, CHIEF JUSTICE, DISSENTING ON DENIAL OF REHEARING:**

¶19. I would grant the motion for rehearing, and I must respectfully dissent from the majority's view. The testimony of Richard Wilkinson and Paul Matlock, as well as that of Mrs. Baker herself, clearly supports the conclusion that Mr. Baker's account was created as a joint tenancy with right of survivorship

(JTWROS). In the absence of the actual account certificates, the testimony of Wilkinson and Matlock, as the brokers who actually set up and handled Mr. Baker's account, constitutes the best evidence regarding his intentions. These brokers both testified that the account in question was a joint one, and Wilkinson testified that Mr. Baker knew that the account was being held in joint tenancy.

¶20. In addition, Wilkinson produced his personal records identifying the account as "JTWROS," and Matlock testified that the Noveen stock certificates had the same JTWROS designation. The majority correctly notes that the JTWROS designation in Wilkinson's personal records, rather than on the account itself, is not dispositive, nor is Matlock's testimony regarding the JTWROS designation on the Noveen stock certificates. Nevertheless, this testimony further buttresses the testimony that Mr. Baker intended to create a joint tenancy with right of survivorship.

¶21. It appears that the Chancellor rejected this evidence in favor of his "judicial notice" regarding his own experiences in having held securities in tenancy in common. While it is undoubtedly true that securities may be purchased and held in tenancy in common, the evidence supports a conclusion that the securities at issue in the present case were held in joint tenancy with the right of survivorship. As such, the fact that the Chancellor himself may have held securities in tenancy in common is irrelevant, and the majority correctly acknowledges that the Chancellor erred in taking judicial notice of his own personal experiences as a securities investor.

¶22. The evidence at trial clearly established that Mr. Baker's securities account was held in joint tenancy with the right of survivorship, and I would hold that Mrs. Baker was entitled to the entire proceeds of the account upon his death. I must, therefore, respectfully dissent.

**McRAE, J., JOINS THIS OPINION.**