642 So.2d 909 (1994)
John DENSON
v.
Jack GEORGE.
No. 91-CA-01172.
Supreme Court of Mississippi.
September 8, 1994.
*910 George Martin Via, Booneville, for appellant.
Nicholas B. Phillips, Iuka, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal arises from the October 14, 1991, judgment of the Tishomingo County Chancery Court which adjudicated the rights of the parties to an alleged "party wall." The chancellor dismissed John Denson's lawsuit against Jack George based on a finding that no "party wall" existed, as contended by John Denson. However, the chancellor went further. The chancellor granted equitable relief to John Denson ("Denson") by recognizing his prescriptive right to use the wall which was owned by Jack George ("George"). But, the chancellor also ordered Denson to pay George's attorney's fees.
We affirm the lower court's finding that no party wall existed and subsequent dismissal of Denson's complaint. However, we reverse that portion of the chancellor's order which imposed payment of George's attorney's fees upon Denson. No finding which supports an award of attorney's fees exists in the record.

I.
Denson and George owned adjacent commercial buildings in the town of Belmont, Mississippi, situated on lot 11, block 6, and lot 12, block 6, respectively. From streetlevel, it appeared as though the buildings shared a common wall, a party wall, which extended above the roof lines of both buildings. That wall was the subject of the dispute between the parties in the action below.
The existing roofs of both George's and Denson's buildings were flat roofs which sloped from the front to the back of the buildings. In the early part of 1989, George began construction of a new roof over his building. But, instead of replacing the existing sloping roof, George had decided to construct a new "gable" roof. The new roof construction required usage of that part of the concrete block wall which extended above George's and Denson's roofs. Utilization of that wall was the genesis of the litigation below.
On March 29, 1989, Denson filed a complaint in the Chancery Court of Tishomingo County, Mississippi, seeking, inter alia, damages and an injunction enjoining George from continuation of his new roof construction. In his complaint, Denson alleged that the wall was a "party wall," and, as such, George was engaging in prohibited conduct by constructing his roof in a manner that would interfere with Denson's use of the wall. On that same day, March 29, 1989, the chancellor issued an order requiring George to "show cause" why the lower court should not grant Denson's requested preliminary injunction. However, no injunctive relief was granted.
George answered, denying that the wall in question was a party wall. Instead, George alleged that the wall was entirely on his property, and further, that he had utilized only one-half (1/2) of the wall in construction of his new roof which rested on the wall. In his counterclaim, George sought $465.00 in actual damages, claiming that he demolished the partially completed roof after Denson approached him and agreed to share in the cost of constructing a larger roof which would cover both of their buildings. However, according *911 to George, after he demolished the new roof, Denson reneged on the deal. In his counterclaim, George also asked for an award of attorney's fees incurred by him in defending himself in the lawsuit.
After numerous continuances, a hearing on the merits was conducted before the chancellor on September 25, 1990. Subsequently, on October 3, 1990, George moved the court to dismiss Denson's claim, enter judgment for him, and to award attorney's fees to him. Thereafter, on October 14, 1990, the chancellor rendered his "MEMORANDUM OPINION AND ORDER" which dismissed Denson's claim. The chancellor concluded that no party wall existed between the two buildings, and, as a consequence, Denson's requested relief could not be granted. But the chancellor went further, stating that his broad equitable power permitted him to fashion an equitable remedy of the issues. Accordingly, he found that Denson had obtained a prescriptive right to attach timbers to George's wall, providing Denson with the capability to construct and support a roof over his own building. Nevertheless, the chancellor assessed Denson with payment of George's attorney's fees in the amount of $465.00.[1]
Denson followed by filing a motion for a new trial. Later, on October 14, 1991, the chancellor ruled on that motion, denying Denson's request for a new trial. Aggrieved, Denson timely filed his notice of appeal on November 12, 1991. On appeal, Denson states two (2) issues, as follows:
A. THE TRIAL COURT ERRED IN FINDING THAT THE WALL STANDING ON THE BOUNDARY BETWEEN APPELLANT'S COMMERCIAL BUILDING AND APPELLEE'S COMMERCIAL BUILDING WAS NOT A PARTY WALL, AND SUCH FINDING IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
B. THE TRIAL COURT ERRED IN AWARDING THE APPELLEE A JUDGMENT FOR $750.00 FOR ATTORNEY'S FEES INCURRED BY THE APPELLEE IN THE PROCEEDINGS BEFORE THE LOWER COURT.

II.

A.
At trial, Denson contended that a singular party wall existed between his building on lot 11 and George's building on lot 12, and that both buildings were fastened to that wall. He also alleged that the predecessors in title to those lots had entered into a parol party wall agreement when the first of the two buildings was constructed, sometime between 1944 and 1947. On the other hand, George asserted that two separate walls existed, and that the wall which extended above the roof line was wholly on his property. He had no knowledge of the alleged parol party wall agreement and, therefore, did not rebut Denson's claim in that regard.
Photographs of the wall(s) between the two adjoining buildings were admitted into evidence; however, the chancellor found that the structural characteristics of the two (2) buildings were not readily identifiable from appearances. Witness testimony on the issue of whether or not the wall was a party wall was also presented at the trial.
George testified that he began the construction of his new roof in January of 1989, and completed the roof in May of that year. It is evident that sometime after George began construction of his new gable roof, Denson approached him and advised George that he planned to renovate his roof as well.
The record is not clear as to what events subsequently transpired. Denson claimed that he told George to save him one-half (1/2) of the wall which he could use as support for his contemplated roof. However, George alleged that a meeting was later held between himself, Denson, George's son, and the roofing contractor, Avis Pruitt ("Pruitt"). At that meeting, plans were discussed for the construction of a roof that would cover the *912 buildings owned by the three men, and an agreement was reached between George, Denson, and George's son regarding the sharing of the cost of construction.[2] Consequently, plans were drawn up for the construction of the new roof, and those plans required removal of the roof construction that had been completed to that date. Regardless of the circumstances, it is obvious that George demolished that part of his roof which had already been built.
The roofing contractor, Pruitt, also testified. He confirmed the existence of the conversation between himself, George, Denson, and George's son concerning a change of construction plans. According to Pruitt, an agreement was reached whereby a new "gable" roof would be constructed over the buildings of George, Denson, and George's son. Pruitt undertook effectuation of the changes in the plans by beginning performance. He tore down the new part of the roof which he had begun for George. But, later, Denson stated that he was not ready to "do his roof at that time," and backed out of the deal. Consequently, the plans were changed again, and a new roof was built which covered only the buildings of George and his son.
Pruitt also testified that, based upon his experience and his inspection of George's and Denson's buildings, it appeared that, while George's wall extended all the way up past the roof line, Denson's roof was supported by a brick wall, and it appeared as though there was an airspace between Denson's wall and George's wall. Last, Pruitt testified that it would not be possible for Denson to build a raised roof unless he "tied in" with George's roof. However, according to Pruitt, sufficient space was left on the wall upon which Denson could rest a support structure for his new raised roof.

B.
It is apparent that the chancellor relied heavily upon the testimony provided at trial by Pruitt, as indicated by the language employed in the chancellor's "MEMORANDUM OPINION AND ORDER" which states, inter alia:
The structural character of the two buildings along the boundary separating lots 11 and 12 (Mr. Denson's and Mr. George's respectively) is not such that it is easily identified. The parties hotly dispute the presence of a single party wall or the existence of two separate but adjoining walls. Avis Pruitt, a building contractor who was engaged by Mr. George to perform the renovation of his roof, testified that, based upon his having inspecting the two buildings as well as knowledge derived from his work on Mr. George's roof, there are two separate walls, one for each building. Mr. Pruitt testified that the wall in Mr. Denson's building is not visible from the roof because it supports the top of the building. In contrast, Mr. George's building wall rises above the roof line and constitutes the only structural support for any additions on the tops of either of the buildings.
The foregoing evidence compels the conclusion that there is not a party wall between the two buildings. If, then, a party wall does not exist, it is inescapable that the relief sought by the plaintiff cannot flow from the present action. The plaintiff's complaint is therefore dismissed with reasonable attorney's fees in the amount of $465.00 being assessed against him.
It does not follow, however, that no remedy is available to the plaintiff. This Court's broad powers to fashion a necessary equitable remedy permit an appropriate resolution of the matters here. Mr. Pruitt testified that sufficient room still exists along the upper side of Mr. George's wall upon which timbers can be laid to support a roof over Mr. Denson's building. Indeed, the undisputed testimony is that in order for Mr. Denson to have a built-up roof, he will have to rest it structurally on Mr. George's wall. This Court, therefore, *913 utilizes its equity power to recognize Mr. Denson's prescriptive right to attach timbers to the adjoining wall on Mr. George's lot in order to construct a built-up roof. This right may only be exercised in such a way that damage will not be done to Mr. George's building.
In summary, the chancellor: (1) found that, based upon the evidence presented at the hearing, no party wall existed, and that the wall in question belonged to George; (2) ordered Denson to pay reasonable attorney's fees incurred by George in the amount of $465.00 (later amended to an amount of $750.00); and (3) recognized Denson's "prescriptive right to attach timbers to the adjoining wall ... in order to construct a built-up roof." Denson appeals two of those matters, and, consequently, they are subject to the appropriate standards of review previously articulated by this Court, as follows:
This Court always reviews a chancellor's findings of fact, but we do not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss. 1989). This standard has also been explained as follows. Whenever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed here. Johnson v. Hinds County, 524 So.2d 947, 956 (Miss. 1988); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). If a chancellor fails to make findings on issues of fact, this Court assumes that the issues were resolved in favor of the appellee. Byrant v. Cameron, 473 So.2d 174, 179 (Miss. 1985).
... For questions of law, our standard of review is de novo. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990); Cole v. National Life Ins. Co., 549 So.2d 1301, 1303 (Miss. 1989); Busching v. Griffin, 542 So.2d 860, 863 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980).
Smith v. Dorsey, 599 So.2d 529, 533 (Miss. 1992).

III.

A.

THE TRIAL COURT ERRED IN FINDING THAT THE WALL STANDING ON THE BOUNDARY BETWEEN APPELLANT'S COMMERCIAL BUILDING AND APPELLEE'S COMMERCIAL BUILDING WAS NOT A PARTY WALL, AND SUCH FINDING IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Denson advances two principal arguments under this assignment of error. First, he alleges that a parol party wall agreement existed between predecessors in title to lots 11 and 12 regarding the wall at issue. Therefore, according to Denson, it follows that the wall must be recognized as a party wall. Second, Denson contends that since it was determined by the chancellor that he had obtained prescriptive rights to use the wall, the chancellor should also have found that, as a matter of law, the wall had become a party wall through prescription. In making those arguments, Denson claims relief: 1) through the existence of a purported contract burdening the property; and 2) by virtue of the statutory definition of a party wall. However, both of Denson's arguments fail, as discussed infra.

1. Questions of Fact.
Much ado is made by Denson regarding his trial testimony, where he testified that a parol party wall agreement was consummated between the predecessors in title to lots 11 and 12 when the first of the two buildings was constructed, sometime between 1944 and 1947. Denson contends that this uncontroverted testimony, concerning the existence of that prior party wall agreement, requires that the wall in question be recognized as a party wall pursuant to Miss. Code Ann. § 89-15-1 (1972), as amended. That statute states:
Any agreement for erecting walls which parties may make who own adjoining lots and desire to build party walls, shall be binding, whether in writing or not; and in case of the failure of either party to comply with his contract, the other may have an action for damages.
*914 Miss. Code Ann. § 89-15-1 (1991)[3]
The general rule of evidence regarding uncontradicted testimony was reiterated in Hearin-Miller Transporters, Inc., v. Currie, 248 So.2d 451 (Miss. 1971). There this Court quoted Ryals v. Douglas, 205 Miss. 695, 722, 39 So.2d 311, 317 (1949), stating that:
The rule is that the testimony of a witness which is uncontradicted, and who is not impeached in some manner known to the law, where he is not contradicted by the circumstances, must be accepted as true. It is true that the direct evidence of a witness may be contradicted by circumstances, but in such case the circumstances relied on for contradiction must be inconsistent with the truth of the testimony. `When the testimony of a witness is not contradicted, either by direct evidence or by circumstances, it must be taken as true.'
Hearin-Miller Transporters, Inc., v. Currie, 248 So.2d at 454 (citations omitted).
However, exceptions to the aforementioned general rule exist. As illuminated in a recent case before this Court, testimony that is uncontroverted may be so improbable and incomplete that, considering the circumstances of the case, the credibility of the testimony is inadequate. Hollaway v. Hollaway, 631 So.2d 127 (Miss. 1993).
There was testimony on both sides of the issue, but the roofing contractor, Pruitt, testified that two walls existed between, and separated, Denson's and George's buildings. Pruitt testified that Denson's existing roof was supported by a separate wall, a brick wall which was situated on the inside of his building, but that George's new gable roof was supported by the wall in dispute. Further, Pruitt stated that it appeared as though there was an airspace between Denson's wall and George's wall, giving more support to the proposition that two walls separated the buildings, instead of a single wall.
"The chancellor as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." Rawson v. Buta, 609 So.2d 426, 431 (Miss. 1992) (citing Rainey v. Rainey, 205 So.2d 514, 515 (Miss. 1967)). Here, the chancellor heard all the testimony but found that of George and Pruitt to be the more credible and convincing. "And the chancellor, being the only one to hear the testimony of witnesses and observe demeanor, is to judge their credibility." Madden v. Rhodes, 626 So.2d 608, 616 (Miss. 1993). Therefore, based upon the record before us, we cannot say that the chancellor erred in concluding that a singular wall, a party wall, did not exist between the buildings owned by Denson and George.
Although he did not make specific findings regarding the parol party wall agreement alleged by Denson, a finding that such agreement did not exist, or was of no effect, is inherent in the chancellor's finding that the wall in question was not a party wall. The chancellor apparently did not find Denson's assertion regarding the alleged parol party wall agreement to be credible. "[T]he question of the weight of the evidence and the credibility of the witness was for the chancellor to determine." In re Will of McGough, 222 So.2d 673, 676 (Miss. 1969). Further, under the Court's standard of review, "[i]f a chancellor fails to make findings on issues of fact, this Court assumes that the issues were resolved in favor of the appellee." Smith v. Dorsey, 599 So.2d 529, 533 (Miss. 1992) (citing Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985)).
We conclude that substantial evidence exists in the record supportive of the chancellor's finding that a party wall did not exist between Denson's building and George's adjoining building. Consequently, under the appropriate standard of review, the finding of fact that a party wall did not exist will not be disturbed.

2. Questions of law.

a.
On appeal, Denson claims that, regardless of whether or not one or two walls exist *915 which "support" the roofs of the respective parties, it was uncontroverted by the testimony adduced at trial, as well as the photographic exhibits, that Denson's existing flat roof and George's prior flat roof both "attached" to the only wall which extends above the roof line of both buildings. Denson contends that, as a consequence, the structural soundness of both roofs depends on the wall in question, and the dependency of his roof on that wall for structural soundness should entitle him to the rights afforded by Miss. Code Ann. § 89-15-3 (1972). Denson expands that assertion, stating that, since the chancellor found that he had obtained prescriptive rights in the wall in question, the chancellor should have found that the wall had become a party wall by prescription.
The relevant statute, Miss. Code Ann. § 89-15-3 (1991), declares that a wall may, if certain conditions are satisfied, become a party wall, stating that:
If the owner of any lot shall build a substantial and durable brick or stone wall on the line which divides his lot from another, and the owner or lessee of that lot should desire to erect an adjoining building and connect the same with the building already erected, so as to make the wall of the former building serve as the wall of his own, he may do so by paying to the owner of the first wall half the value thereof, or have the value of so much of the former wall as he may use as a wall to his own house; but he shall not be at liberty to use the former wall in any way which may prove dangerous or detrimental to the owner, except he may close lights therein.
Miss. Code Ann. § 89-15-3 (1991).
However, based upon the chancellor's findings, the immediately preceding statute would be of no effect. The chancellor, adopting the building contractor's testimony, concluded that two (2) walls existed between Denson's building and that of George, not a singular party wall. As a consequence, it logically appears that when Denson's and George's buildings were constructed, the wall in question was not utilized as a common wall between the two buildings. A fortiori, the conditional language of the statute which requires that the owner of the adjoining second building construct his building "so as to make the wall of the former building service as the wall of his own," was not satisfied.

b.
Although the chancellor did not find that the wall in question was a singular wall separating Denson's building from George's building (party wall), he declared that Denson had obtained a prescriptive right in the disputed wall for the support of his roof. However, those two actions of the chancellor are not necessarily inharmonious, as asserted by Denson.
According to Pruitt's testimony, two (2) walls separated George's and Denson's buildings as far up as the roof lines of both buildings. Further, there was sufficient evidence from which the chancellor could conclude that only one wall extended "above" the roofs of both buildings was utilized by the buildings owned by George and Denson. Denson's roof used, and attached to, that wall for limited purposes. That is, Denson's metal roofing material extended up to and sealed against the wall. Accordingly, Denson's roof was "attached" to the wall by some method (i.e., flashing, tar, glue, etc.).
As a consequence, it was possible for the chancellor to conclude that Denson had acquired a prescriptive easement for the purpose of attaching his roof to the extended portion of the wall, even though the wall was not a party wall. Whether the chancellor's declaration of the extent of that prescriptive easement exceeded permissible boundaries was not an issue cross-appealed by George; therefore, we do not further comment on that subject.
Based upon the law, the evidence in the record, and the chancellor's findings, the chancellor properly determined that a party wall did not exist. Therefore, this issue lacks merit and we affirm that determination of the chancellor.

B.

THE TRIAL COURT ERRED IN AWARDING THE APPELLEE A JUDGMENT FOR $750.00 FOR ATTORNEY'S FEES INCURRED BY THE APPELLEE *916 IN THE PROCEEDINGS BEFORE THE LOWER COURT.
In George's answer and counterclaim, he demanded a judgment against Denson for, inter alia, "damages ... and also an amount to be set by this Court for reasonable attorney fees." George alleged that Denson's actions constituted an abuse of process and were instigated by Denson "in an attempt to harass, scare and dictate to and make the defendant/counter-plaintiff succumb to the wishes and desires of the plaintiff/counter-defendant in his effort to stop ... any type of construction or improvement... ."
The chancellor dismissed Denson's complaint but granted him equitable relief. However, the chancellor also assessed Denson with the payment of George's attorney's fees without making a finding regarding frivolity of Denson's complaint or any other justification for payment of attorney's fees. Moreover, since the chancellor afforded Denson equitable relief, it is difficult to conclude that Denson's complaint, as a whole, was frivolous.
The issue of attorney's fees as an award of damages is not new to this Court. In one case, the general rule was reiterated as follows:
Regarding attorneys' fees, this Court has held that in the absence of contractual provisions or statutory authority, attorneys' fees may not be awarded as damages in a case unless punitive damages are also proper. Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss. 1986); Gardner v. Jones, 464 So.2d 1144, 1150 (Miss. 1985); Aetna Casualty Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979).
Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987).
In the case sub judice, there was no evidence of a contractual provision which provided for the payment of attorney's fees by Denson. Also, there was no award of punitive damages and the chancellor made no finding of conduct which would warrant assessment of such punitive damages. Therefore, the only remaining basis for finding authority to assess Denson with attorney's fees lies in our statutes.
George argues that Miss. Code Ann. §§ 11-53-27 and 11-53-35 (1972), which were in effect at the time of the trial and which provided for the payment of "costs" by an unsuccessful plaintiff, are statutory authority for the imposition of attorney's fees against Denson. Additionally, George submits that Rule 65, M.R.C.P., and Miss. Code Ann. § 11-13-1 (1972), et seq., provide for security to be given by an applicant seeking injunctive relief, the security to cover the "costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." M.R.C.P. 65(c).
But, in the case sub judice, no injunction was ever issued and no security was pledged by Denson, as contemplated by Rule 65(c), M.R.C.P. As a consequence, George was precluded from making a motion for dissolution of an injunction, as anticipated by Miss. Code Ann. §§ 11-13-31, 11-13-35 (1991).
Also, a fair reading of Miss. Code Ann. §§ 11-53-1 through 11-53-79 (1972), indicates that the term "costs" does not include attorney's fees. Specifically, Miss. Code Ann. §§ 11-53-63 and 11-53-65 (1972), speak to "costs" as being taxed by the clerk of the court. As a practical matter, the clerk's bill for costs of a case does not normally include attorney's fees.
Regarding the payment of security costs pledged by one seeking an injunction, George admits that no such costs were pledged, yet he seeks to characterize the award of attorney's fees as payment of pledged security costs under Rule 65, M.R.C.P. That contention is facially defective and specious at best. Rule 65 does not grant authority to re-characterize an award of attorney's fees as an award of security costs for seeking an allegedly improper injunction which was never issued.
George's argument that Miss. Code Ann. § 11-13-1 (1972), et seq., is instructive on this issue is also not well-founded. The aforementioned statutes of Chapter 13 of Title 11 require a dissolution of an injunction before any payment would be required to be made to the party enjoined. However, as mentioned earlier, no injunction was ever *917 issued in the case sub judice, a fortiori, no injunction could be dissolved.
No basis for assessing the payment of attorney's fees exists in the record. Therefore, we reverse that portion of the chancellor's opinion which ordered Denson to pay George's attorney's fees.

IV.
The chancellor was presented with substantial evidence indicative of the existence of two (2) walls instead of one (1) wall. However, based upon the lack of a contractual provision requiring payment of attorney's fees, no finding of punitive conduct, no award of punitive damages, and the absence of supporting statutory authority, the chancellor's assessment of attorney's fees was improper.
Accordingly, the chancellor's finding that no party wall existed and his subsequent dismissal of Denson's complaint are affirmed, but the chancellor's assessment of attorney's fees is reversed.
AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] The amount of $465.00 was later corrected to the amount of $750.00 by order of the chancellor dated October 14, 1991.
[2] George's son's building was on the side of George's building which was opposite to the side of George's building on which Denson's building was located. Therefore, the new proposed roof would cover three buildings in a row.
[3] Miss. Code Ann. § 89-15-1 (1972), et seq., is the successor statute(s) to Miss. Code Ann. § 1002 (1942), which would have been the governing statute at the time of consummation of the alleged party wall agreement.