724 So.2d 1022 (1998)
In the Matter of the CONSERVATORSHIP OF the Person and Estate of June D. WILLIAMS.
Essie Parker, Appellant,
v.
Clementine Parker, Appellee.
No. 97-CA-00205 COA.
Court of Appeals of Mississippi.
December 18, 1998.
Rehearing Denied March 3, 1999.
*1023 Rebecca C. Taylor, Wiggins, Attorney for Appellant.
William S. Murphy, Lucedale, Attorneys for Appellee.
BEFORE BRIDGES, C.J., HINKEBEIN AND KING, JJ.
HINKEBEIN, J., for the Court:
¶ 1. Essie Parker (Essie), as conservator for the person and estate of June Williams (June), appeals the George County Chancery Court's January 14, 1997 order denying Parker's petition for real estate proceeds, rent, and attorneys fees from Clementine Parker (Clementine), the long time care-giver of June. Essie assigns the following points of error to the Chancellor's decision:
I. THE CHANCELLOR ERRED IN FINDING JUNE D. WILLIAMS COMPETENT TO CONVEY INTEREST IN REAL PROPERTY.
II. THE CHANCELLOR ERRED IN PERMITTING CLEMENTINE AND SHARLENE PARKER TO USE FUNDS, SOCIAL SECURITY AND PROCEEDS FROM THE SALE OF REAL PROPERTY IN THE SUM OF $26,000 WITHOUT A GUARDIAN OR CONSERVATOR APPOINTED TO DISBURSE UNDER THE SUPERVISION OF THE CHANCERY COURT OF GEORGE COUNTY, MISSISSIPPI.
III. THE CHANCELLOR ERRED IN PERMITTING CLEMENTINE PARKER TO RESIDE ON THE PROPERTY OF THE INCOMPETENT AND FINDING THAT THE INCOMPETENT HAD A LIFE ESTATE IN AND TO THE REAL PROPERTY TO THE DETRIMENT OF THE INCOMPETENT.
IV. THE CHANCELLOR ERRED IN REQUIRING THE ORIGINAL PLAINTIFFS TO PAY COURT COSTS AND REASONABLE ATTORNEYS FEES INCURRED BY THE INCOMPETENT.
V. THE CHANCELLOR ERRED IN FINDING THE INCOMPETENT CONVEYED HER INTEREST IN AND TO THE REAL PROPERTY TO THE HEDEGAARDS FOR THE SUM OF $26,000.
VI. THE CHANCELLOR ERRED IN PERMITTING THE PARKERS TO EXPEND THE FUNDS OF THE INCOMPETENT WHEN THEY STOOD IN A FIDUCIARY CAPACITY WITHOUT PRIOR APPROVAL BY THE COURT.
VII. THE CHANCELLOR ERRED IN FINDING THE ORAL AGREEMENT BETWEEN THE PREDECESSORS IN TITLE OF JUNE D. WILLIAMS, MR. AND MRS. PRENTISS WILLIAMS, PERMITTING CLEMENTINE AND SHARLENE PARKER TO USE THE PROPERTY FOR MANY YEARS DID NOT VIOLATE THE STATUTE OF FRAUDS.
VIII. THE COURT ERRED WHEN IT ARBITRARILY ASSIGNED THE RENTAL VALUE OF $100 PER *1024 MONTH WITHOUT ANY EVIDENCE WHATSOEVER TO SUPPORT THIS RENTAL VALUE.
¶ 2. Holding these assignments of error to be without merit, we affirm the judgment of the chancery court.

FACTS
¶ 3. The record reveals that June, who is now in her fifties, was born mentally and physically disabled. In 1971, her late parents, Prentiss and Annie Williams, deeded her a life estate in their Lucedale home and approximately forty acres of land. Her parents also deeded the remainder to June's sister Sharlene Parker and her husband Clementine. There was apparently an oral understanding that Sharlene and Clementine would live in the home and care for June for the rest of her life. There seems to be no dispute that all members of the family were aware of this unwritten agreement. At the time, June was already living with the couple and for over twenty years she continued to share the home with Sharlene and Clementine and their children. The record reveals she was well treated and regularly taken for appropriate medical treatment for her various physical ailments. While June received a small monthly Social Security benefit of $330, it appears the bulk of her support was provided by Sharlene and Clementine. In 1980, the couple was forced to take out a ten thousand dollar Farmer's Home Administration loan to repair extensive storm damage to the home and property. The record contains photos which reflect the scope of the damage. In a 1989 document signed by Sharlene, Clementine, and purportedly June, approximately thirteen acres of the property was sold to H. Lee Hedegaard and his wife Beverly. The sale was made in order to pay off the loan to the Farmer's Home administration. The remaining sixteen thousand dollars from the sale was paid to Sharlene and Clementine but a later court ordered accounting shows the money went toward further repairs to the home as well as to provide for June. Several months after the sale, Sharlene died and Clementine's daughter Melonie Parker Aleman (Melonie) moved in to help her father care for June.
¶ 4. In April 1990, June's health deteriorated to the point where she had to enter a nursing home. She continues to reside there with her care paid for through Social Security and other government benefits, although there is the prospect she might have to return to live with Clementine and his daughter. In October 1990, June's sister Essie sought and obtained from the George County Chancery Court a conservatorship over June. Essie testified at trial that prior to being named conservator, she had seen June only a handful of times since 1970. In the chancellor's order from the case sub judice, he states his belief that the prior chancellor appointed Essie instead of Clementine out of an abundance of caution and out of fear of some conflict. Essie promptly had Clementine and Melonie enjoined from removing June from the nursing home. In the case sub judice, she sought to have Clementine pay June's estate the value of June's interest from the 1989 land sale, claiming that June had been incompetent to approve the sale. Essie also sought to have Clementine pay June's estate years worth of back-rent for the use of the Lucedale home. She also sought $8,444.69 in attorney fees.
¶ 5. On January 14, 1997, the chancellor denied the relief sought by Parker, although he did order Clementine to pay $100 per month rent while June was not actually living in the Lucedale home. The chancellor's order did find that June was mentally incompetent at the time of trial as well as when the conservatorship was created. However, the chancellor found that without any proof being offered to the contrary, June was mentally competent and understood the nature and consequences of her actions when she signed the warranty deed in the 1989 transaction. The order attributes June's declining physical and mental health since the execution of the warranty deed to her current mental incompetence. The chancellor also gave great weight to the sacrifice and love shown by Clementine, Sharlene, and their children in caring for June for more than two decades. He noted that June's other family members had failed to offer any assistance, financial or otherwise, in caring for her during the twenty-one years period. The chancellor *1025 found that the funds expended by Clementine and his family to provide for June far exceeded the meager amount June received from Social Security, and that the court "cannot place any value on the time and love expended on June."

DISCUSSION

I. THE CHANCELLOR ERRED IN FINDING JUNE D. WILLIAMS COMPETENT TO CONVEY INTEREST IN REAL PROPERTY.

V. THE CHANCELLOR ERRED IN FINDING THE INCOMPETENT CONVEYED HER INTEREST IN AND TO THE REAL PROPERTY TO THE HEDEGAARDS FOR THE SUM OF $26,000.
¶ 6. Since the assignments of error in issues one and five both deal with the chancellor's finding that June was competent to convey her interest in the real property, they will be addressed together. Essie argues that, based on the totality of circumstances, it was obvious that June was not competent in 1989 to convey her interest in the real estate and the chancellor's decision was in error. Clementine echoes the chancellor's order and asserts that it was supported by substantial evidence with no abuse of discretion or manifest error. We agree that the chancellor's decision as to June's competence at the time of the sale was within his discretion.
¶ 7. The Mississippi Supreme Court has long held that "[w]henever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed here." Denson v. George, 642 So.2d 909, 913 (Miss.1994). Those findings will not be disturbed unless "such findings are manifestly wrong or clearly erroneous." Id. Substantial evidence has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion" or to put it simply, more than a "mere scintilla" of evidence. Johnson v. Ferguson, 435 So.2d 1191, 1195 (Miss.1983). It is a well established precept that "[w]here a challenger asserts lack of capacity to execute a deed, his burden becomes one of proving his point by clear and convincing evidence." Mullins v. Ratcliff, 515 So.2d 1183, 1190 (Miss.1987). The grantor's mental capacity is to be measured as of the time of the deed's execution. Richardson v. Langley, 426 So.2d 780, 783 (Miss. 1983).
¶ 8. There is no dispute that June lacked capacity as of the time Essie was named conservator, as well as when she actually testified in the case sub judice. However, the record reveals conflicting testimony as to June's capacity to understand financial matters as of the time of the sale of the real property. It is also evident that the chancellor was aware of the varying agendas in this intra-family conflict. Clementine testified that June understood the essentials of the land sale and what the proceeds would be used for, and was present during negotiations with H.L. Hedegaard as well as at the closing. Clementine's daughter Melonie also recounted a telephone conversation where June described the sale of the land and the signing of documents at the lawyer's office. Melonie also related June's later physical and mental deterioration that led to her being placed in the nursing home. Essie, however, testified that June's mental capacity had remained the same all her life, and at no time had she been able to understand anything regarding money or financial concepts. Her testimony also revealed that she had extremely limited contact with June over a twenty-year period. Essie's daughter-in-law, Debra Parker, also testified that June had always operated at the level of a child. Other family members who testified took either the position that June was competent at the time of the sale or was not. One of the only non-family witnesses was H.L. Hedegaard, who testified that June was present and listening during negotiations for the land sale, but did not actively participate. In addition, while doctors' statements as to June's competency were required for the 1990 conservatorship hearing, there were no such statements or testimony in the case sub judice as to her competency at the time of the 1989 land sale. It is well settled that the trial judge sitting as the trier of facts has the sole authority to determine the credibility of the *1026 witnesses. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987). In light of what the record reveals, we cannot say that the chancellor was manifestly in error in finding that Essie did not meet her burden of proving by clear and convincing evidence that June was incompetent at the time of the sale. Id. at 1190. As such, we also cannot find an abuse of discretion in the chancellor's finding that June knew what she was doing, realized the consequences of her act in signing and delivering the deed, and understood what the funds were to be used for. Accordingly, we find no merit to these assignments of error.

II. THE CHANCELLOR ERRED IN PERMITTING CLEMENTINE AND SHARLENE PARKER TO USE FUNDS, SOCIAL SECURITY AND PROCEEDS FROM THE SALE OF REAL PROPERTY IN THE SUM OF $26,000 WITHOUT A GUARDIAN OR CONSERVATOR APPOINTED TO DISBURSE UNDER THE SUPERVISION OF THE CHANCERY COURT OF GEORGE COUNTY, MISSISSIPPI.

III. THE CHANCELLOR ERRED IN PERMITTING CLEMENTINE PARKER TO RESIDE ON THE PROPERTY OF THE INCOMPETENT AND FINDING THAT THE INCOMPETENT HAD A LIFE ESTATE IN AND TO THE REAL PROPERTY TO THE DETRIMENT OF THE INCOMPETENT.

VI. THE CHANCELLOR ERRED IN PERMITTING THE PARKERS TO EXPEND THE FUNDS OF THE INCOMPETENT WHEN THEY STOOD IN A FIDUCIARY CAPACITY WITHOUT PRIOR APPROVAL BY THE COURT.
¶ 9. The assignments of error in issues two, three, and six all deal with the purported improper use of June's property by Clementine and his late wife. Accordingly, these issues will be considered together. Essie contends that Clementine and Sharlene stood in a fiduciary capacity to June and breached that duty by expending funds and living in June's home rent-free without court supervision. Essie argues the chancellor was in error in not ordering Clementine to pay damages or for not ordering the sale of the property for the benefit of June. Clementine argues that funds received from the land sale and other sources were properly used to maintain June's home and to provide her care. Clementine also asserts that residing in the home was necessary in order to care for June and maintain the property, and was in line with what a court of equity would have ordered to preserve and protect the property.
¶ 10. If June's parents had formalized the 1971 agreement that Clementine and Sharlene care for June for the rest of her life, it is unlikely that this litigation would have transpired. However, by relying on a "family understanding" rather than a conservatorship, the record reflects a family battle that may only incidently focus on the welfare of June. Despite the non-existence of a conservatorship prior to 1990, it seems clear that Clementine and his late wife stood in a fiduciary relationship to June. The Mississippi Supreme Court has recognized that such a relationship exists where "there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and duties involved in it need not be legal, it may be moral, social, domestic, or merely personal." Mansell v. Gross, 345 So.2d 1315, 1316 (Miss.1977). Mississippi statutory law makes clear that a fiduciary or a conservator is prohibited from using or borrowing the funds or property belonging to a ward. Miss.Code Ann. § 91-7-253 (Rev. 1994). Furthermore, conservatorships are controlled by "all laws relative to the guardianship of a minor." Miss.Code Ann. § 93-13-259 (Rev.1994). The Mississippi Code also holds that it is the duty of a guardian "to improve the estate committed to his charge, and to apply so much of the income, profit or body thereof as may be necessary for the comfortable maintenance and support of the ward and of his family, if he have any, after obtaining an order of the court fixing the amount." Miss.Code Ann. § 93-13-38 (Rev. 1994). The guardian is also under a duty to make an accounting of the ward's estate to the court. Miss.Code Ann. § 93-13-33 (Rev. 1994). The gist of the statutory law can be found in the Mississippi Supreme Court's *1027 long established rule that the chancery court is to "act as the superior guardian for all persons under such disability." Union Chevrolet Co. v. Arrington, 162 Miss. 816, 826, 138 So. 593, 595 (1932). What complicates the case sub judice is that in their efforts to fulfill the wishes of June's parents, Clementine and Sharlene were unknowingly acting as guardians outside the authority of the court. However, Mississippi law appears to be cognizant of the issues present in this case. The Mississippi Supreme Court has held that "[p]reviously unauthorized but reasonable and proper expenditures" on behalf of the ward may be ratified and approved by the court after they are made. Neville v. Guardianship of Kelso, 247 So.2d 828, 834 (Miss.1971). The court stated that "on the issue of whether the expenditures were reasonable and proper in supporting and maintaining the ward, consideration must be given to the fact ... that `the guardian has served ably and well under trying circumstances.'" Id. at 835.
¶ 11. In the case sub judice, the record reveals that the proceeds of the land sale were used to pay off the loan taken to repair the storm damage to June's home, as well as for other home maintenance and the care of June. For more than two decades, the meager Social Security benefits received by June were supplemented by Clementine and his late wife in order to provide a comfortable life for June. A review of the record reveals no evidence that June's funds or property were used for any other purpose than to care for June. Likewise, the use of June's home was essential to caring for June, and she was unable to maintain the property herself. We find that substantial evidence supports the chancellor's finding that the expenditures made by Clementine and Sharlene on behalf of June were reasonable and proper and fit to be ratified and approved by the court. Since the record reflects that Clementine and Sharlene cared for June with no outside assistance from other family members, it is clear they "served ably and well under trying circumstances." Id. Accordingly, we find these assignments of error to be without merit.

IV. THE CHANCELLOR ERRED IN REQUIRING THE ORIGINAL PLAINTIFFS TO PAY COURT COSTS AND REASONABLE ATTORNEYS FEES INCURRED BY THE INCOMPETENT.
¶ 12. Essie argues that the chancellor erred in not requiring Clementine to pay the approximately $9000 in attorney fees and court costs incurred by Essie in pursuing this litigation. Clementine again refers to the chancellor's order in asserting no abuse of discretion. Allowance of attorney fees is largely within the broad discretion of the chancellor. Conservatorship of Stallings, 523 So.2d 49, 54-5 (Miss.1988). A chancellor's ruling on findings of fact will not be disturbed unless manifestly wrong. Benson v. George, 642 So.2d 909, 913 (Miss.1994). The standard of review to be applied to a trial court's decision on attorney fees is abuse of discretion but otherwise, a reviewing court will not undertake to substitute its judgment for that of the chancellor. Barber v. Barber, 234 Miss. 89, 93, 105 So.2d 630, 632 (1958). "Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal." Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss. 1997).
¶ 13. The record reveals that an appraisal of the house and property that make up June's life estate had a value of $28, 445 as of July 1, 1990. The attorney fees sought by Essie constitute nearly a third of the entire value of June's holdings. The record reveals that the only viable means of paying the approximately $9000 in attorney fees would be a court ordered sale of the property and a divestment of the remainder interest held by Clementine. We find guidance by analogy from the Mississippi Supreme Court's holding in Bank of Mississippi v. Southern Mem'l Park, 677 So.2d 186, 191-2 (Miss.1996). In that case, the court dealt with the attorney fees generated by counsel acting on behalf of a trustee. Id. The court offered the admonishment that "[a] trustee should not allow its counsel to undertake extraordinary legal measures to ensure that the letter of law is followed with regard to matters of dubious importance, particularly if *1028 doing so would unduly deplete the assets of the trust." Id. Our review of the record finds no abuse of discretion on the part of the chancellor as to the denial of attorney fees. As such, we find this assignment of error to be without merit.

VII. THE CHANCELLOR ERRED IN FINDING THE ORAL AGREEMENT BETWEEN THE PREDECESSORS IN TITLE OF JUNE D. WILLIAMS, MR. AND MRS. PRENTISS WILLIAMS, PERMITTING CLEMENTINE AND SHARLENE PARKER TO USE THE PROPERTY FOR MANY YEARS DID NOT VIOLATE THE STATUTE OF FRAUDS.
¶ 14. Essie argues that the chancellor's acknowledgment of the agreement made between June's late parents and Clementine and Sharlene was in error. She asserts that the oral agreement allowing Clementine and his family to live in June's house violated the statute of frauds. However, in her brief, she offers no authority to support this contention. The Mississippi Supreme has repeatedly held that "it is the duty of the appellant to provide authority and support of an assignment. If a party does not provide this support this Court is under no duty to consider assignments of error ...." and thus the assignment of error is procedurally barred. Drennan v. State, 695 So.2d 581, 585-86 (Miss. 1997).

VIII. THE COURT ERRED WHEN IT ARBITRARILY ASSIGNED THE RENTAL VALUE OF $100 PER MONTH WITHOUT ANY EVIDENCE WHATSOEVER TO SUPPORT THIS RENTAL VALUE.
¶ 15. The chancellor's order denied Essie's request that Clementine pay $250 per month in rent for the period beginning November 1, 1990. The chancellor did order Clementine to pay $100 per month beginning February 1, 1997, with such payments to continue until such time, if any, that June returns to live in the Lucedale home. The monthly benefits would go for the benefit of June's care. Essie contends that the amount of the month rental fee is unreasonable and constitutes error. The chancellor's order takes into account the undisputed facts present in the record. These include Clementine's ongoing maintenance of the property as well as the equitable consideration of Clementine's twenty-one years of care for June. The chancellor also notes that June's condition would not improve if he were to grant Essie's motion, since all her needs are now provided by the nursing home and government benefits. As such, her only un-met need is maintaining her home and preventing waste. That duty has been performed by Clementine from 1971 until this present day. We find that the decision of the chancellor was well within his broad discretion and see nothing in the record that would justify disturbing it on appeal. Accordingly, we find no merit to this assignment of error.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF GEORGE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.